## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

```
------------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11
                                            :
SOUTHERN MONTANA ELECTRIC,                  :        Case No. 11-62031-RBK
GENERATION AND TRANSMISSION                 :
COOPERATIVE, INC.                           :
                                            :
          Debtor.                           :
                                            :
------------------------------------------------------------------x
```

### INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 105, 361, 362, 363 AND 507 OF THE BANKRUPTCY CODE, (III) SCHEDULING A FINAL HEARING

At Butte in said District this 22nd day of November, 2011.

Upon the motion (the "Motion"), dated November 17, 2011, of Southern Montana Electric Generation and Transmission Cooperative, Inc. ("Southern Electric"), as debtor and debtor in possession (the "Debtor"), for interim and final orders authorizing it to, among other things, (i) use Cash Collateral (as defined below) pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and (ii) provide adequate protection including pursuant to Bankruptcy Code sections 105(a), 361, 362, 363, and 507; rules 2002, 4001, 6004(h), 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); such Motion being deemed amended by the Stipulation for Interim Use of Cash Collateral between the Debtor and the Prepetition Secured Parties (defined below) dated November 21, 2011, and having sought the following relief:

(a)     This Court's authorization, pursuant to Bankruptcy Code section 363, to use Cash Collateral (which Cash Collateral shall be used only in accordance with the budget, which

budget shall be acceptable to the Noteholders (as defined herein) in their sole discretion and subject only to the Permitted Variances (as defined herein), annexed hereto as Exhibit 1 (as such budget may be extended, varied, supplemented, or otherwise modified in accordance with the provisions of this Interim Order (defined below) or the Final Order (defined below), the "Approved Budget"), which Approved Budget shall be deemed increased, to the extent such amounts are not already reflected in the Approved Budget, by adequate protection described herein to the Prepetition Secured Parties; and

(b)   This Court's approval pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507 of the form and manner of adequate protection being granted to the Prepetition Secured Parties who have been granted prepetition liens and security interests under the following documents (collectively, the "Prepetition Loan Documents"):

(i)   The Indenture of Mortgage, Security Agreement and Financing Statement dated as of February 26, 2010 (as amended, restated, supplemented or otherwise modified from time to time, the "Indenture"), among Southern Electric as grantor, U.S. Bank National Association as trustee (the "Indenture Trustee"), Bank of New York Mellon Trust Company, N.A. as collateral agent, and the guarantors from time to time party thereto, pursuant to which Southern Electric incurred indebtedness to certain holders (the "Noteholders" and collectively with the Indenture Trustee, the "Prepetition Secured Parties") for (a) the Senior First Mortgage Notes, Series 2010A, due February 26, 2040 in the aggregate principal amount of $75,000,000 (the "Series 2010A Notes", and (b) the Senior First Mortgage Notes, Series 2010B, due February 25, 2026 in the aggregate principal amount of $10,000,000 (the "Series 2010B Notes, and with the Series 2010A Notes, the "Notes"); and

(ii)     The Collateral Agency Agreement, dated as of February 26, 2010 (as the same may have been amended and supplemented, or modified from time to time), among Southern Electric, the guarantors from time to time party thereto, and the Indenture Trustee.

(a)     This Court's scheduling an interim hearing (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(a), (b) and (d) to consider the entry of an interim order in the form hereof (this "Interim Order") which, among other things, authorizes the use of Cash Collateral and grants adequate protection to the Prepetition Secured Parties, as provided in this Interim Order;

(b)     This Court's modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Interim Order;

(c)     This Court's scheduling, pursuant to Bankruptcy Rule 4001(a), (b) and (d), a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") which, among other things, grants, on a final basis, authorization for the Debtor to use the Cash Collateral and adequate protection to the Prepetition Secured Parties as provided in the Final Order;

(d)     This Court's finding, pursuant to Bankruptcy Rules 2002 and 4001(b)(1), that notice of the Interim Hearing is sufficient having been given to (i) the Office of the United States Trustee (the "U.S. Trustee"), (ii) counsel to any known secured creditors of record, (iii) counsel to the Indenture Trustee, (iv) the twenty (20) largest unsecured creditors of the Debtor, (v) counsel to the Noteholders, (vi) any known party asserting a Lien against any of the Debtor's assets, and (vii) the Internal Revenue Service (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required; and

The Interim Hearing having been held on November 21, 2011; and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing and the entire record herein; and this Court having heard and resolved or overruled all objections to the

interim relief requested in the Motion; and this Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion, as modified herein on an interim basis, is necessary to avoid immediate and irreparable harm to the Debtor's estate prior to a final hearing, and otherwise is fair and reasonable, and in the best interests of the Debtor, its estate, and its creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

      A.      <u>Disposition</u>.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied and overruled.

      B.      <u>Petition Date</u>.  On October 21, 2011 (the "<u>Petition Date</u>"), the Debtor commenced its chapter 11 case (the "<u>Chapter 11 Case</u>") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner or committee has been appointed in the Chapter 11 Case, though a joint motion of the Debtor and the U.S. Trustee is pending for the appointment of a Chapter 11 Trustee.

      C.      <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  Venue for the Chapter 11 Case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

D.  <u>Statutory Committee</u>.  As of the date herein, the Office of the United States Trustee has not appointed an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102.

E.  <u>Prepetition Liens</u>.  To secure the Obligations (as defined below) under the Indenture, the Prepetition Secured Parties allege that the Debtor granted the Indenture Trustee, on behalf of the Noteholders, valid first priority liens (the "<u>Prepetition Liens</u>") upon and in substantially all of the Debtor's assets, and all proceeds and products of such assets (the "<u>Prepetition Collateral</u>") in accordance with the terms of the Prepetition Loan Documents.

F.  <u>Debtor's Obligations</u>.  The Noteholders allege, and the Debtor reserves the right to contest, that:

(a)  As of the Petition Date, the Debtor was liable to the Prepetition Secured Parties in respect of obligations under the Indenture for (i) the aggregate principal amount of not less than $85 million on account of the Notes issued under the Indenture (plus accrued and unpaid interest thereon) and (ii) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Loan Documents or applicable law (collectively, the "<u>Obligations</u>").[1]

(b)  As of the Petition Date, all of the Obligations are unconditionally due and owing by Southern Electric to the Prepetition Secured Parties.

(c)  As of the Petition Date, all claims in respect of the Obligations (i) constitute legal, valid, binding and nonavoidable obligations of the Debtor and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset,

---

[1]  The Noteholders further assert entitlement to interest, default interest, and other amounts due and which come due in accordance with the terms of the Prepetition Loan Documents.  All rights of the Noteholders are expressly reserved.

recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

(i)    The Prepetition Liens (i) constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the Prepetition Collateral that, prior to the entry of this Interim Order, were senior in priority over any and all other liens on the Prepetition Collateral, subject only to those liens explicitly permitted by the Prepetition Loan Documents (to the extent any such Permitted Liens were valid, properly perfected, non-avoidable liens senior in priority to the Prepetition Liens on the Petition Date) (the "Permitted Priority Liens"), if any; (ii) are not subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation; and (iii) are subject and subordinate only to (a) the Carve-Out (as defined below) and (b) Permitted Priority Liens, if any.

A.    Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in which the Prepetition Secured Parties have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise.  The Noteholders allege, and the Debtor reserves the right to contest, that all or substantially all of the Debtor's cash, cash equivalents, negotiable instruments, investment property and securities, including the cash, cash equivalents, negotiable instruments, investment property and securities in its deposit accounts, wherever located constitute the Cash Collateral (or part of the Prepetition Collateral) of the Prepetition Secured Parties.

A/74591790.3                                   6

B.  Use of Cash Collateral.  The Debtor has an immediate and critical need to use the Cash Collateral to operate its businesses and effectuate a reorganization of its business, which will be used in accordance with the terms of this Interim Order and subject to the Approved Budget.  Without the use of Cash Collateral, the Debtor will not have sufficient liquidity to be able to continue to operate its business.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of certain parties and to adequately protect the consenting and non-consenting parties' interests in the Prepetition Collateral.  Absent authorization to immediately use Cash Collateral, the Debtor's estate and its creditors would suffer immediate and irreparable harm.

C.  Sections 506(c) and 552(b).  In light of the Indenture Trustee's and the Noteholders' agreement to subordinate their liens and claims to the Carve-Out, to permit the use of the Prepetition Collateral and to permit the use of their Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Interim Order, each of the Indenture Trustee and the Noteholders are entitled to (a) a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b) and (b) a waiver of the provisions of Bankruptcy Code section 506(c) related to the period of time from the Petition Date through the Termination Date (as defined above).

D.  Good Cause.  Good cause has been shown for entry of this Interim Order. The Debtor has an immediate and critical need to use Cash Collateral in order to continue to operate its businesses in the ordinary course in accordance with the Approved Budget, cash collateralize issued and outstanding letters of credit, preserve the value of the Debtor's business, and effectuate a reorganization of its business.  The Debtor's use of Cash Collateral has been

7

deemed sufficient to meet the Debtor's immediate postpetition liquidity needs, subject to the terms of this Interim Order and the Approved Budget.  Good, adequate and sufficient cause has, therefore, been shown for the immediate grant of the relief sought in the Motion, as modified herein.

    E. <u>Consent to Use of Cash Collateral</u>.  The Indenture Trustee and the Noteholders consisting of Prudential Insurance Company of America, Universal Prudential Arizona Reinsurance Company, Forethought Life Insurance Company and Modern Woodman of America (collectively, the "<u>Noteholders</u>") have consented to the Debtor's use of Cash Collateral solely on the terms and conditions set forth in this Interim Order and in accordance with the Approved Budget.

    F. <u>Good Faith</u>.  Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Interim Order are fair, reasonable, are the best available under the circumstances, have been fully disclosed, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, have been negotiated at arms' length and in good faith and are in the best interests of the Debtor, its estate and its creditors.

    G. <u>Immediate Entry of Interim Order</u>.  The Debtor has  requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission granted herein to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor.  This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for access to the liquidity necessary for the continued flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing business and further enhance the Debtor's prospects for a successful restructuring.  Based upon the foregoing findings, acknowledgments,

A/74591790.3

and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.   <u>Motion Granted</u>.  The Motion is granted on an interim basis, subject to the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

2.   <u>Authorization to Use Cash Collateral</u>.  Subject to the terms of this Interim Order, upon entry of this Interim Order, the Debtor is authorized to use Cash Collateral in which the Prepetition Secured Parties may have an interest, in accordance with the terms, conditions, and limitations set forth in this Interim Order and the Approved Budget (including any Permitted Variances).  Any dispute in connection with the use of Cash Collateral shall be heard by this Court.

3.   <u>Supplemental Approved Budget</u>.

(a)   In the event the Debtor and the Noteholders fail to agree on a supplemental budget for a possible extension of the effect of this Interim Order and the consensual use of Cash Collateral beyond the Termination Date as set forth in this Interim Order, the Debtor's right to use Cash Collateral shall terminate in accordance with paragraph 5(a)(ii) herein.

(b)   The Prepetition Secured Parties shall have no obligation with respect to the Debtor's use of the Collateral (as defined below), Prepetition Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Debtor's compliance with the Approved

Budget or to pay (directly or indirectly from their Collateral or Prepetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget.  Cash Collateral used under this Interim Order shall only be used by the Debtor in accordance with the Approved Budget and this Interim Order.  Subject to the Carve-Out, the Prepetition Secured Parties' consent to the Approved Budget shall not be construed as consent to the use of any Cash Collateral beyond the Termination Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

4.   <u>Permitted Variance</u>.  Notwithstanding the Approved Budget, so long as no Termination Event has occurred, the Debtors shall be authorized to use Cash Collateral with respect to any one line item in the Approved Budget, in an amount that would not cause the Debtor to use Cash Collateral in an amount greater than one-hundred ten percent (110%) of the Approved Budget with respect to such line item measured on a four-week rolling basis; provided, however, that in no event shall the collective variances to the Approved Budget cause the Debtor to use Cash Collateral in an amount greater than one hundred percent (100%) of the Approved Budget for such applicable period (a "<u>Permitted Variance</u>").  If the aggregate amount of Cash Collateral actually used by the Debtors, measured on a four-week rolling basis, is less than the aggregate amount of Cash Collateral available for use by the Debtor in the Approved Budget during such period, then the Debtor may carry over any such unused amount to future periods in the Approved Budget and allocate such unused amounts to any line item in the Approved Budget; provided, however, that in no event shall the Debtor use Cash Collateral in an amount greater than one hundred percent (100%) of the Approved Budget for that period of time from the Petition Date through the Monday of the preceding week.

5.   <u>Termination of Cash Collateral Usage</u>.

(a)     Notwithstanding anything in this Interim Order to the contrary, the use of

Cash Collateral authorized herein shall terminate without prior notice or order of the Court or

any further action by the Prepetition Secured Parties, upon the occurrence of the "Termination

Date."  The Termination Date shall occur (notice of which shall be provided thereafter to the

Debtor, the U.S. Trustee, and any official committee appointed in the case) on the earliest to

occur of (each of the following, a "Termination Event"):

i.     December 21, 2011;

ii.    Upon the expiration of the Approved Budget unless a
       supplemental approved budget has been agreed upon by the Debtor
       and the Noteholders, in their sole discretion;

iii.   The date of the Final Hearing (which shall be December 20, 2011)
       if a Final Order (provided that such Final Order has not been
       reversed, vacated, stayed, unless such stay has been vacated, or
       appealed, unless such appeal has been dismissed or otherwise
       finally resolved) authorizing the use of Cash Collateral,
       substantially in accordance with the terms of this Interim Order
       and otherwise reasonably acceptable to the Noteholders,[2] is not
       entered on or before December 20, 2011;

iv.    Five (5) business days after the date the Noteholders or the
       Indenture Trustee, at the direction of the Noteholders, provides the
       Debtor with written notice of the Debtor's failure to comply with
       any of the terms or conditions of this Interim Order;

v.     The date an application, motion or other pleading is filed by the
       Debtor seeking to amend, modify, supplement or extend this
       Interim Order without the prior written consent of the Noteholders;
       or the date of entry of any order reversing, amending,
       supplementing, staying, vacating or otherwise modifying this
       Interim Order without the prior written consent of the Noteholders;

vi.    The date any material provision of this Interim Order shall for any
       reason cease to be valid and binding or the Debtor shall so assert in
       any pleading filed in any court;

---

[2]     The budget attached to the Final Order shall be the Approved Budget, unless the Noteholders, in their sole
        discretion, agree otherwise.

vii.   The date an application is filed by the Debtor for the approval of any superpriority claim or any lien in the Chapter 11 Case which is *pari passu* with or senior to the Adequate Protection Liens, Superpriority Claim, or Prepetition Liens without the prior written consent of the Indenture Trustee and the Noteholders;

viii.      The effective date of any confirmed chapter 11 plan in the Chapter 11 Case;

ix.   Unless otherwise agreed in writing by the Noteholders, the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtor;

x.   The date of the entry of an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any asset of the Debtor with a value in excess of $1 million;

xi.   The date the Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code, the Debtor shall file a motion or other pleading seeking the dismissal or conversion of the Chapter 11 Case pursuant to Bankruptcy Code section 1112 or otherwise, or the selection of a Chapter 11 trustee not reasonably acceptable to the Noteholders, provided however that the Noteholders must object to any selection within ten (10) days of an appointment and may only terminate the use of Cash Collateral hereunder pursuant to an order of the Court after notice and a hearing;

xii.   The date of the commencement of any action by the Debtor against the Indenture Trustee or any of the Noteholders with respect to the Obligations or the Prepetition Liens; or

xiii.      The withdrawal, amendment, modification of, or filing of a pleading by the Debtor seeking to withdraw, amend or modify the proposed sale process and bidding procedures (as described in the sale motion filed on the first day of the Chapter 11 Case), in a manner not reasonably acceptable to the Noteholders.

(a)   The Noteholders may waive the occurrence of the Termination Date.  The

Debtor's authority to use Cash Collateral shall automatically terminate upon the occurrence of

the Termination Date, unless waived in writing by the Noteholders, all without further order or

relief from the Court.  Upon the occurrence of the Termination Date, all Adequate Protection

Obligations (as defined below) shall be immediately due and payable, and the Prepetition

Secured Parties shall have all rights and remedies provided in this Interim Order and under

applicable law.  Notwithstanding anything herein or the occurrence of the Termination Date, all

of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties

under this Interim Order shall survive the Termination Date.

    2.   <u>Restriction on Use of Cash Collateral</u>.

     (a)   From the date hereof through the Termination Date, the Cash Collateral,

and all proceeds of the Prepetition Collateral, including, without limitation, all of the Debtor's

existing or future Cash Collateral, shall not, directly or indirectly, be used for any payments,

expenses or disbursements of the Debtor except for (i) those payments, expenses and/or

disbursement that are expressly permitted under this Interim Order or other order entered by this

Court (entered pursuant to motions and orders which shall be reasonably acceptable to the

Noteholders) and in all cases which are consistent with the Approved Budget; (ii) compensation

and reimbursement of fees and expenses incurred during the term of this Interim Order and

payable pursuant to Bankruptcy Code sections 330 and 331 to professionals or professional firms

retained by the Debtor pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503 (the

"<u>Debtor Professionals</u>") and permitted or awarded pursuant to an order of this Court; and (iii) the

payment of reasonable fees and expenses of the Indenture Trustee and the Noteholders, as

provided for herein, including, but not limited to, the reasonable fees and expenses of the

Noteholder Professionals (as defined herein); <u>provided</u>, <u>however</u>, that the foregoing shall not be

construed as consent to the allowance of any of the amounts referred to in the preceding clause

(ii) and shall not affect the right of any party in interest to object to the allowance and payments

of any such amounts.

(b)     Subject to the Carve-Out, no administrative expense claims, including fees and expenses of professionals, shall be charged or assessed against or recovered from the Prepetition Collateral or Collateral or attributed to the Prepetition Secured Parties with respect to their respective interests in the Prepetition Collateral or Collateral pursuant to the provisions of Bankruptcy Code section 506(c) or otherwise by, through, or on behalf of the Debtor, without the prior written consent of the Prepetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Prepetition Secured Parties related to the period of time from the Petition Date through the Termination Date.  Except as set forth herein, the Prepetition Secured Parties have not consented or agreed to the additional use of the Prepetition Collateral or the Collateral and nothing contained herein shall be deemed a consent by the Prepetition Secured Parties to any charge, lien, assessment or claim against the Prepetition Collateral or the Collateral.  The Prepetition Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or the Prepetition Collateral.

(c)     No Cash Collateral, Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used directly or indirectly by the Debtor, any official committee appointed in the case, and any trustee appointed in the Chapter 11 Case or any successor case, or any other person, party or entity to (i) investigate, object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Obligations including the liens with respect thereto or any action purporting to do any of the foregoing; (ii) investigate, assert or prosecute any claims and defenses against the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors or any action purporting to do the foregoing; (iii) prevent, hinder, or otherwise delay the Prepetition

Secured Parties' assertion, enforcement, or realization on the Obligations, Cash Collateral, the Prepetition Liens, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with the Interim Order; (iv) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder; (v) apply to the Court for authority to approve superpriority claims or grant liens in the Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Liens, Superpriority Claims or Prepetition Liens, unless all Obligations under the Prepetition Loan Documents, this Interim Order and the Final Order have been refinanced or paid in full in cash or otherwise agreed to in writing by the Noteholders in their sole discretion; or (vi) seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Noteholders or provided for by the Approved Budget.

(d)     The Debtor shall use property not constituting Cash Collateral prior to using Cash Collateral for the payment of expenses, utility deposits, and for such other payments authorized to be made by the Debtor consistent with the Bankruptcy Code.

3.     <u>Adequate Protection</u>.  The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361 and 363(c) and (e) to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, equal to the aggregate diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral (the "<u>Adequate Protection Obligations</u>").  As such, the Indenture Trustee, for the benefit of itself and the Noteholders, is entitled to receive adequate protection to the extent of any diminution in value of their interest in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale or lease of Prepetition Collateral, the subordination of the Prepetition Liens to the Carve-Out, as described herein, or the imposition of the automatic stay (collectively,

the "Diminution in Value") pursuant to Bankruptcy Code sections 361, 362 and 363.

Accordingly, the Prepetition Secured Parties are hereby provided with the following forms of

adequate protection:

   (a) Fees and Expenses.  The Debtor is authorized and directed to pay from

Cash Collateral only, when due and payable and without regard to whether such fees and

expenses were incurred prepetition or postpetition, and without regard to whether such fees and

expenses are set forth on the Approved Budget, the reasonable fees and expenses incurred by the

Noteholders, and such professionals and/or consultants retained by the Noteholders and the

Indenture Trustee (the "Noteholder Professionals"), in each case including, without limitation, in

connection with protecting the rights and interests of the Noteholders and the Indenture Trustee

in connection with the Chapter 11 Case, provided that if the payment of such aggregate

reasonable fees and expenses of the Noteholder Professionals causes the Debtor's expenditures

to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute

a Termination Event.  After delivery of a statement of fees and expenses (redacted for privilege)

the Debtor is authorized and directed to pay all fees, costs, and expenses in accordance with the

terms of this Interim Order, without the Noteholders or the Indenture Trustee having to file any

further application with this Court for approval or payment of such fees, costs or expenses

(except as may be required in accordance with the Local Rules of the Bankruptcy Court).  Any

such fees, costs and expenses incurred by the Noteholder Professionals shall be paid within five

(5) business days of delivery of an invoice to the Debtor.  All amounts paid as adequate

protection are deemed permitted uses of Cash Collateral.

   (b) Adequate Protection Liens and Adequate Protection Superpriority Claim

for Prepetition Secured Parties.  Subject to the Carve-Out, the Indenture Trustee, for the benefit

of the Noteholders, is hereby granted: (i) valid, enforceable, nonavoidable and fully perfected, first-priority postpetition security interests in and liens (effective and perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) (the "Adequate Protection Liens") on all of the Collateral solely to provide adequate protection for the Diminution in Value, if any, and only in the proven amount of same, of the Prepetition Secured Parties' interest in Cash Collateral, as measured from the Petition Date through the Termination Date; provided however that no such lien shall be granted or deemed granted for the purposes hereof on any property defined as Excepted Property on Exhibit C to the financing statement of the Prepetition Secured Parties; and (ii) first-priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the Superpriority Claim") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b),  506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552 (subject to entry of a Final Order), 726 (to the extent permitted by law), 1113 and 1114, whether or not such expenses or claims arise in the Chapter 11 Case or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the aggregate Diminution in Value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the Indenture Trustee and the Noteholders in the Cash Collateral as measured from the Petition Date through the Termination Date; provided however that no such lien shall be granted or deemed granted for the purposes hereof on any property defined as Excepted Property on Exhibit C to the

financing statement of the Prepetition Secured Parties, including, without limitation, any such diminution in value resulting from (a) depreciation, physical deterioration, use, sale, loss or decline in market value of the Prepetition Collateral; (b) the Carve-Out; or (c) imposition of the automatic stay under section 362 of the Bankruptcy Code or otherwise.  For purposes of this Interim Order, the term "Collateral" shall include, without limitation, any and all prepetition and postpetition property, assets and interests in property and assets of the Debtor (or any successor trustee or other estate representative in the Chapter 11 Case or successor case), and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtor (or any successor trustee or other estate representative in the chapter 11 case or successor case), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created, whether existing prior to the Petition Date or arising after the Petition Date, including, without limitation, all accounts, inventory, contracts, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment intangibles, machinery and equipment, real property (including all facilities), capital stock of each subsidiary of the Debtor, deposit accounts, commercial tort claims and other causes of action, Cash Collateral, proceeds of the Avoidance Actions (subject to the entry of a Final Order) and all proceeds of any of the collateral described above.  The Adequate Protection Liens and Superpriority Claim shall be subject and subordinate only to: (i) the Permitted Priority Liens, and (ii) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in this Interim Order.  Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Indenture Trustee or the Noteholders

hereunder is insufficient to compensate for any Diminution in Value of their interests in the Cash Collateral during the Chapter 11 Case or any successor case.

4.    Reporting Obligations.  The Debtor shall timely file its monthly operating reports and shall provide such financial and other reporting information and access as may be reasonably requested by the Indenture Trustee or the Noteholders.

5.    Carve-Out.

(a)    As used in this Interim Order, "Carve-Out" means on account of fees and expenses incurred during the term of the Interim Order and set forth on the Approved Budget: (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6) and (ii) fees of the Debtor Professionals, to the extent allowed by the Bankruptcy Court, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses incurred by the Debtor Professionals, which are incurred prior to the Termination Date; subject to the rights of any party in interest to object to the allowance of any such fees and expenses.  For the avoidance of doubt, and without limiting the foregoing, so long as the Termination Date has not occurred, (A) the Debtor is authorized, subject to applicable court orders, to pay any expense that falls within the Carve-Out; and (B) Cash Collateral may be used for (i) payment of fees and expenses of the Debtor Professionals and the Committee Professionals up to the Debtor Professional Fee Cap and the Committee Professional Fee Cap, respectively, each as allowed and payable under Bankruptcy Code sections 330 and 331 and (ii) payments otherwise agreed to by the Noteholders, provided, however, that in each case such payments shall be in accordance with the Approved Budget or otherwise in accordance with this Interim Order.

(b)     No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to or *pari passu* with that of the Prepetition Liens, the Superpriority Claims or Adequate Protection Liens granted by this Interim Order, shall be granted while any portion of the Indenture Obligations remain outstanding or in effect without the prior written consent of the Noteholders.

6.     Cash Management.  The Debtor shall not seek approval of any cash management system without the prior approval of the Noteholders, which consent shall not be unreasonably withheld, and any order approving such cash management system shall be reasonably acceptable to the Noteholders.

7.     Equities of the Case.  In light of the subordination of their liens to the Carve-Out, the Prepetition Secured Parties shall be entitled to all benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, product, offspring, or profits of any of their collateral related to the period of time from the Petition Date through the Termination Date.

Additional Perfection Measures.

(a)     Pursuant to this Interim Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities shall, pursuant to this Interim Order be, and they hereby are deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the Uniform

Commercial Code as in effect as of the date hereof or similar applicable laws in favor of the Prepetition Secured Parties).

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Indenture Trustee may, but shall not be obligated to, file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of Collateral or Prepetition Collateral, as applicable, and such filings by the Indenture Trustee shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

8.    <u>Automatic Stay Modified</u>.  Upon the occurrence of the Termination Date, the Prepetition Secured Parties may move to modify or vacate the automatic stay of Bankruptcy Code section 362 and the Debtor hereby consents to the expedited notice and hearing on the same.

9.    <u>Collateral Rights</u>.

(a)    In the event that any party who has both received notice of the Interim Hearing and holds a lien or security interest in Collateral or Prepetition Collateral that is junior and/or subordinate to the Adequate Protection Liens or the Prepetition Liens in such Collateral or Prepetition Collateral receives or is paid the proceeds of such Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source,  such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral in trust for the Prepetition Secured Parties and shall immediately turn over such proceeds to the Indenture Trustee for the benefit of the Noteholders.

A/74591790.3                    21

(b)     If the Indenture Trustee or the Noteholders shall at any time exercise any of their respective rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations and Obligations owed to the Prepetition Secured Parties or to receive any amounts or remittances due hereunder, including, without limitation, foreclosing upon and selling all or a portion of the Collateral (all solely to the extent not inconsistent with the requirements of this Interim Order), the Indenture Trustee shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the Indenture Trustee may determine.  No holder of a lien shall be entitled to object on the basis of the existence of any such lien to the exercise by the Indenture Trustee of its respective rights and remedies under this Interim Order or other applicable law to effect satisfaction of the Indenture Obligations or Adequate Protection Obligations owed to the Prepetition Secured Parties or to receive any amounts or remittances due hereunder.  All proceeds and payments delivered to the Indenture Trustee pursuant to this paragraph may be applied to the Obligations or Adequate Protection Obligations owed to the Noteholders, as determined by the Indenture Trustee, in accordance with the Indenture, and in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise.

(c)     The Debtor shall not sell, lease, transfer or otherwise dispose of its interest in the Collateral outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the Noteholders (which consent shall not be unreasonably withheld).  In the event of any such sale, lease, transfer, license, or other disposition of property of the Debtor that constitutes Collateral outside the ordinary course of business (to the extent permitted by this Interim Order), the Debtor is authorized and directed,

A/74591790.3                                    22

without further notice or order of this Court, to promptly pay to the Indenture Trustee, for the benefit of the Noteholders, 100% of the net cash proceeds resulting therefrom no later than the second business day following receipt of such proceeds, solely to the extent that, after giving effect to such payment, there remains in the Debtor's estate cash in an amount equal to the sum of:  (a) any amounts that remain unspent pursuant to the Approved Budget and (b) the Carve-Out.

(d)     In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtor is authorized and directed to pay to the Indenture Trustee, for the benefit of the Noteholders, 100% of any insurance proceeds, condemnation award, or similar payment no later than the third business day following receipt of payment by the Debtor, solely to the extent that, after giving effect to such payment, there remains in the Debtor's estate cash in an amount equal to the sum of:  (a) any amounts that remain unspent pursuant to the Approved Budget and (b) the Carve-Out.

10.     Successors and Assigns.  The provisions of this Interim Order shall be binding upon the Debtor, the Prepetition Secured Parties, and each of their respective successors and assigns, and shall inure to the benefit of the Debtor, the Prepetition Secured Parties and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code.  The provisions of this Interim Order shall also be binding on all of the Debtor's creditors, equity holders, and all other parties in interest including any official committee appointed in the Chapter 11 Case.

11.     Binding Nature of Agreement.  Except with respect to a sale of the Debtor's assets approved by the Prepetition Secured Parties, the rights, remedies, powers, privileges,

liens, and priorities of the Prepetition Secured Parties under this Interim Order shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Chapter 11 Case, by the dismissal or conversion of the Chapter 11 Case or in any subsequent case under the Bankruptcy Code unless and until the Obligations have first been indefeasibly paid in full in cash and completely satisfied in accordance with the Prepetition Loan Documents.

12.     No Modification of Interim Order.  The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Interim Order without the prior written consent of the Noteholders and no such consent shall be implied by any action, inaction or acquiescence of the Indenture Trustee or the Noteholders.

13.     Priorities Among Prepetition Secured Parties.  Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the adequate protection granted hereunder), such relative priorities and rights shall continue to be governed by the Prepetition Loan Documents, to the extent otherwise applicable.

14.     No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

15.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (i) the Indenture Trustee's or any Noteholder's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection, (ii) any

of the rights of the Indenture Trustee or any of the Noteholders under the Bankruptcy Code or under applicable nonbankruptcy law. Nothing contained herein shall be deemed a finding by the Court or an acknowledgment by the Indenture Trustee or the Noteholders that the adequate protection granted herein does in fact adequately protect the Indenture Trustee or the Noteholders against any Diminution in Value of their interests in the Prepetition Collateral.

16.   No Waiver by Failure to Seek Relief. The delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the Prepetition Secured Parties.

17.   Priority of Terms. To the extent of any conflict between or among (a) the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the Prepetition Loan Documents, the terms and provisions of this Interim Order shall govern.

18.   No Third-Party Beneficiary. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

19.   Survival. Except as otherwise provided herein, (a) the protections afforded to the Prepetition Secured Parties under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing the Chapter 11 Case or (ii) converting the Chapter 11 Case into a case under Chapter 7 of the Bankruptcy Code, and (b) the Adequate Protection Liens and the Superpriority Claims shall continue in the Chapter 11 Case, in any such

successor case or after any such dismissal.  Except as otherwise provided herein, the Adequate

Protection Liens and the Superpriority Claims shall maintain their priorities as provided in this

Interim Order and the Final Order, and not be modified, altered or impaired in any way by any

other financing, extension of credit, incurrence of indebtedness, or any conversion of the Chapter

11 Case into a case pursuant to Chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11

Case, or by any other act or omission until the Indenture Obligations are indefeasibly paid in full

in cash or receive treatment as otherwise agreed to by the Noteholders.

        20.   <u>Final Hearing Date</u>.  The Final Hearing to consider the entry of the Final Order

approving the relief sought in the Motion shall be held on **Tuesday, December 20, 2011, at

10:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM,

FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

        21.   <u>Adequate Notice</u>.  The Debtor shall promptly mail copies of this Interim Order,

proposed Final Order and notice of the Final Hearing to the Notice Parties, any known party

affected by the terms of the Final Order, and to any other party requesting notice after the entry

of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in

writing setting forth with particularity the grounds thereof, and filed with this Court and served

so as to be actually received no later than five business (5) days prior to the Final Hearing by the

following:  (i) Doak and Associates, 100 N. 27th Street, Suite 200, Billings, MT 59101, Attn:

Jon E. Doak, Esq. (doaklaw@wtp.net), and Goodrich Law Firm, P.O. Box 1899, Billings, MT

59103, Attn: Malcolm H. Goodrich, Esq. (mgoodrich@goodrichlaw.com), counsel to the Debtor;

(ii) Bingham McCutchen LLP, One State Street, Hartford, CT 06103, Attn: Jonathan B. Alter,

Esq. (jonathan.alter@bingham.com), and Gough, Shanahan, Johnson & Waterman, PLLP, P.O.

Box 1715, 33 S. Last Chance Gulch, Helena, MT 59624-1715, Attn:  Timothy C. Fox

A/74591790.3                26

(tcf@gsjw.com), counsel to the Noteholders; and (iii) the Office of the United States Trustee, Liberty Center, Suite 204, 301 Central Avenue, Great Falls, MT 59401 (Attn: Daniel P. McKay (Dan.P.McKay@usdoj.gov)).

22. <u>Entry of Interim Order; Effect</u>.  This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in the Chapter 11 Case.

23. <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

24. <u>Binding Effect of Interim Order</u>.  The terms of this Interim Order shall be binding on any trustee appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code.

25. <u>Waiver of Requirement to File Proofs of Claim</u>.  Neither the Indenture Trustee nor the Noteholders shall be required to file proofs of claim with respect to any of the Obligations.

<div style="margin-left:40%">

BY THE COURT

*Ralph B Kirscher*
_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

</div>