UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**SOUTHERN MONTANA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC**,

Debtor.

Case No. **11-62031-11**

# MEMORANDUM of DECISION

At Butte in said District this 15th day of May, 2012.

In this Chapter 11 bankruptcy, after due notice, a hearing was held April 24, 2012, in Billings on Yellowstone Valley Electric Cooperative, Inc.'s ("YVEC") combined Motion for: (1) Abstention Regarding Its Pending Litigation Against Southern Montana, and (2) Entry of an Order Granting Relief From the Automatic Stay filed February 17, 2012, at docket entry nos. 274 and 278.  The Chapter 11 Trustee, Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. oppose YVEC's aforementioned Motion.  Beartooth Electric Cooperative, Inc. filed a joinder to YVEC's aforementioned Motion on March 22, 2012, at docket entry no. 334.  Western Area Power Administration ("WAPA"), an agency with the Department of Energy, provided notice and clarification that it is not a party to certain ligation commenced by YVEC, has not waived immunity and that any attempted assignment of allocations of Federal hydropower under that certain Contract for Firm Electric Service, Contract No. 04-UGPR-26, as amended, whether by the parties, a State Court order, or

1

otherwise, is subject to WAPA's determination and approval under applicable Federal law and WAPA's procedures.

John Cardinal Parks and Bart B. Burnett of Denver, Colorado and Joseph V. Womack of Billings, Montana appeared at the hearing on behalf of the Chapter 11 Trustee; Annette W. Jarvis of Salt Lake City, Utah and John G. Crist of Billings, Montana appeared on behalf of YVEC; Harold V. Dye of Missoula, Montana appeared on behalf of the Unsecured Creditors' Committee; Martin S. King of Missoula, Montana appeared on behalf of PPL Energy, Plus, LLC; Jeffery A. Hunnes of Billings, Montana appeared on behalf of Tongue River Electric Cooperative, Inc.; Gary Ryder of Hysham, Montana appeared on behalf of Mid-Yellowstone Electric Cooperative, Inc.; Martin S. Smith of Billings, Montana appeared on behalf of Beartooth Electric Cooperative, Inc.; Doug James of Billings, Montana and James W. Santoro of Great Falls, Montana appeared on behalf of the City of Great Falls and Electric City Power; Jonathan B. Alter of Hartford, Connecticut appeared on behalf of noteholders Modern Woodmen of America, Forethought Life Insurance Company, Universal Prudential Arizona Reinsurance Company, and Prudential Insurance Company of America; John P. Paul of Great Falls, Montana appeared on behalf of Fergus Electric Cooperative, Inc., and Ross P. Richardson of Butte, Montana appeared on behalf of NorthWestern Energy. Terry Holzer, Lee Freeman and Ted Church testified. YVEC's Exhibits 1 through 15, Tongue River Electric Cooperative, Inc.'s Exhibits AA, BB, CC, II and JJ, and the Trustee's Exhibits A through E were admitted into evidence without objection. At the conclusion of the hearing, the Court took the matters under advisement.

This Court has jurisdiction of this Chapter 11 bankruptcy under 28 U.S.C. § 1334(a).

YVEC's motion to modify stay is a core proceeding under 28 U.S.C.§ 157(b)(2)(G).  This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

FACTS

The Debtor was formed in 2003 as a not-for-profit under Montana's Rural Electric and Telephone Cooperative Act.  *See* MONT. CODE ANN. ("MCA") § 35-18-101, *et seq*.  YVEC, Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., Fergus Electric Cooperative, Inc. were the original Members of Debtor.[1]  The original Members were previously members of Central Electric Supply Cooperative.  In 2004, the City of Great Falls/Electric Power City requested and was accepted as a purchasing member of Debtor and was granted a seat on Debtor's Board of Directors.[2]  Thus, for purposes of this Memorandum of Decision, Debtor is deemed to have six Members.

In 2004, the original Members entered into Wholesale Power Contracts with Debtor.  The Wholesale Power Contract ("WPC") between Debtor and YVEC dated April 27, 2004, recognizes that Debtor "may construct an electric generating plan or transmission system, or both, for the purpose, of among other things, of supplying electric energy and related services to borrowers from [the Rural Utilities Service], which are or may become members of" Debtor.  The WPC "shall remain in effect through the 31st day of December, 2030[.]" The WPC further provides:

---

[1] Member is defined at MCA § 35-18-102(4) as "each incorporator of a cooperative and each person admitted to and retaining membership in a cooperative as provided by the articles of incorporation or bylaws of the cooperative, including persons admitted to joint membership."

[2] Under Debtor's Bylaws, a Board of Trustees manages the business and affairs of Debtor.  Each Member is authorized in the Bylaws to elect one trustee to serve on Debtor's Board of Trustees.

3

> [Debtor] shall sell and deliver to the Member and the Member shall purchase and receive from [Debtor] all electric energy and related transmission services which the Member shall require for the operation of the Member's system to the extent that [Debtor] shall have such wholesale electric energy, transmission services agreements, and associated facilities available . . .

Also in 2004, Debtor and the original Members entered into a power sales agreement with the Bonneville Power Administration and Debtor entered into a contract to purchase power from the Western Area Power Administration ("WAPA"). The power sales agreement with the Bonneville Power Administration expired by its own terms on October 31, 2011. The agreement with WAPA is still in effect and provides part of the electricity supplied by Debtor to its Members. Debtor's agreement with WAPA is considered a contract with an agency of the United States Government.

After Debtor's formation in 2003, the original Members began investigating alternative sources of power, including the possibility of constructing a coal-fired electric generating facility. Construction of a coal-fired electric generating facility was ultimately abandoned and discussions began about the possibility of building of a gas-fired generation plant. By 2007, YVEC alleges it began questioning the cost and financial viability of a gas-fired generation plan.

In November of 2007, YVEC submitted a resolution to Debtor's Board of Trustees (the "November 2007 Resolution"), requesting that Debtor's Board of Trustees negotiate the terms and conditions of YVEC's withdrawal from Debtor. Debtor's Board of Trustees was apparently not receptive to YVEC's request for withdrawal. YVEC contends the Board of Trustee's adopted new Policies to change the way costs relating to a Member's withdrawal would be calculated. YVEC argues the new Policies were an effort by the Board of Trustees to make it prohibitively expensive and punitive for YVEC to withdraw as a Member.

In April of 2008, Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. decided to proceed with construction of an electric generating plan.  On June 15, 2008,  Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. formed SME Electric Generation and Transmission Cooperative ("SME") to proceed with construction of a gas-fired generating station, which is now known as the Highwood Generation Station.

YVEC asserts Debtor's Board of Trustee's and SME proceeded to engage in multiple acts in violation of the WPC, Debtor's bylaws and Debtor's policies, prompting YVEC to file a complaint in the Montana Thirteenth Judicial District Court for Yellowstone County, requesting termination of its membership in Debtor, termination of its WPC, an accounting and return of all funds it contributed toward expenses of the Highwood Generating Station and all deposit and equity contributions to Debtor, and order that Debtor assign to YVEC its WAPA contract and a share of the Bonneville Power Administration contract and for punitive damages.  *See Yellowstone Valley Electric Coop., Inc. v. Southern Montana Elec. Generation and Transmission Coop., Inc., et al.*, Cause No. DV 08-1797.  YVEC filed an amended complaint on or about July 26, 2010.

Debtor and the other Members filed an answer to YVEC's amended complaint on or about July 20, 2010.  The answer included a counterclaim requesting declaratory relief by determining and declaring that YVEC's WPC is a valid and binding contract which Plaintiff is obligated to timely perform until its expiration.  In October of 2010, YVEC and the City of Great Falls/Electric Power City entered into a stipulation to dismiss the City of Great Falls/Electric

Power City from the YVEC litigation. However, on March 15, 2011, the City of Great Falls/Electric Power City filed a complaint seeking declaratory judgment against Debtor requesting entry of a judgment that the City of Great Falls/Electric Power City is not a proper member of Debtor, that the City of Great Falls/Electric Power City's Wholesale Power Contract and other obligations of Debtors and SME are void or voidable, for access to documents, and return of a security deposit. In response to the City of Great Falls/Electric Power City's complaint, debtor filed an answer and counterclaim.

On or about February 26, 2010, Debtor and SME completed a financing package for construction of the Highwood Generating Station as a gas-fired generation plan. As part of the loan package, financed primarily by Prudential Insurance Company of America, the assets of SME developed in connection with the Highwood Generating Station, were transferred to Debtor. A 40 megawatt gas-fired simple cycle generation facility was ultimately constructed by Debtor as Phase One of a 120 megawatt combined cycle facility. The plant, which became operational in September of 2011, is the Highwood Generating Station.[3]

In the litigation commenced by YVEC, the parties have completed all discovery necessary to prepare for trial. In addition, fifteen depositions have been taken and the parties have exchanged in excess of 15,000 documents. The State Court considered and denied a comprehensive Motion for Judgment on the Pleadings. The State Court likewise considered and denied the Defendants' Motion for a TRO and for Preliminary Injunction that sought an immediate order that YVEC be required to pay the amounts sought through their Counterclaims.

---

[3] YVEC asserts that as of April 30, 2008, Debtor's total investment in the development of the Highwood Generating Station was just over $19.4 million. YVEC further asserts that its share of the Highwood Generating Station project costs was just over $7 million.

After completing discovery and after receiving rulings on dispositive pre-trial motions, YVEC's State Court action was set for jury trial on November 9, 2011.

Prior to the scheduled trial, Debtor filed on October 21, 2011, its voluntary chapter 11 bankruptcy petition. By agreement of the U.S. Trustee and the six Members of Debtor, Lee A. Freeman was appointed on November 29, 2011, as the Chapter 11 Trustee for the Debtor. YVEC's pending State Court action has not been removed to this Court, but YVEC requests that this Court abstain from hearing the matter. In the alternative, YVEC requests that this Court lift the automatic stay to allow the State Court action to proceed.

APPLICABLE LAW and DISCUSSION

I.  Abstention

YVEC filed its combined motion for abstention or for relief from the automatic stay on February 17, 2012. YVEC asks this Court to abstain from hearing any arguments or issues raised in the State Court action pursuant to 28 U.S.C. § 1334(c)(2) arguing: (a) the request for abstention is timely; (b) the State Court action is based on Montana State law claims; (c) the State Court action is a non-core proceeding; (d) absent 28 U.S.C. § 1334(b) the State Court action could not have been commenced in federal court; and (e) the State Court action is ready for a jury trial, and can be timely adjudicated therein. In the alternative, YVEC requests that the Court exercise its discretion and decline to exercise jurisdiction over the State Court action pursuant to 28 U.S.C. § 1334(c)(1) based on the application of the relevant factors outlined by the Ninth Circuit Court of Appeals in *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir. 1990).

A civil proceeding may (a) arise under title 11, (b) arise in a case under title 11 or (c)

relate to a case under title 11. Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), and applies only to "related to" proceedings. *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997).

Discretionary abstention, on the other hand, is governed by 28 U.S.C. § 1334(c)(1), and applies to all three types of civil proceedings: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." *In re General Carriers Corp.,* 258 B.R. 181, 189-190 (9th Cir. BAP 2001). "[A]bstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first instance.... The act of abstaining presumes that proper jurisdiction otherwise exists." *In re General Carriers Corp.,* 258 B.R. at 190, quoting *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2nd Cir.1995); *In re Lewis*, 20 Mont. B.R. 364, 368 (Bankr. D. Mont. 2003).

In *Lewis,* this Court cited controlling authority for the following proposition on abstention:

> In *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999 (9th Cir.1997), however, the Ninth Circuit noted that "[a]bstention can exist only where there is a parallel proceeding in state court." *Id.* at 1009. Section §1334(c) abstention should be read *in pari materia* with 28 U.S.C. § 1452(b) remand, so that § 1334(c) applies only in those cases in which there is a related proceeding that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2). *Id.* at 1010; *In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001). A decision to abstain or not to abstain is not reviewable by appeal. § 1334(d); *see also, Security Farms*, 124 F.3d at 1009-10 & n. 7; *In re Lazar*, 237 F.3d at 982.

*Lewis*, 20 Mont. B.R. at 369.. Permissive abstention is a matter within the sound discretion of

the bankruptcy court, and a federal court may voluntarily abstain from hearing a particular proceeding on core or non-core matters "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . ." 28 U.S.C. § 1334(c)(1); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996).

The Ninth Circuit has set forth several factors that bankruptcy courts employ in evaluating whether permissive abstention is proper:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990).

Nothing in the record suggests the parties have sought to remove the State Court action from the Thirteenth Judicial District Court to either this Court or federal district court and none of the parties have commenced an adversary proceeding. YVEC's request for abstention is, therefore, premature because other than Debtor's Chapter 11 case itself, there is no pending proceeding before this Court from which to abstain. *In re General Carriers Corp.,* 258 B.R. at 190 ("One of the threshold requirements for mandatory or discretionary abstention, as set forth above, is that there must be a 'proceeding' from which the bankruptcy court can abstain.")

Accordingly, YVEC's request for abstention, whether mandatory or permissive, is denied.

II.     Relief from the Automatic Stay

In the alternative, YVEC requests relief from the automatic stay arguing cause exits to terminate the stay based on the relevant factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D.Utah 1984), as adopted by the Ninth Circuit Bankruptcy Appellate Panel in *In re Kronemyer*, 405 B.R. 915 (9th Cir. BAP 2009). YVEC also asserts cause exits to lift the automatic stay because this Court lacks subject matter jurisdiction to hear and decide the pending State Court litigation based on the Supreme Court of the United States' recent decision in *Stern v. Marshall*, 131 S. Ct. 2594, 2608, 2615, 2620 (2011).

The Court first rejects YVEC's argument that after *Stern v. Marshall*, this Court does not have subject matter jurisdiction over the pending dispute between YVEC and Debtor. The "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Battleground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130 (9th Cir. 2010) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). A bankruptcy court's jurisdiction is, generally, prescribed by 28 U.S.C. § 1334(b). In addition to granting jurisdiction to bankruptcy courts over bankruptcy cases, the statute provides that "the district courts [and by reference pursuant to 28 U.S.C. § 157, the bankruptcy courts] shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

In a 5-4 decision, the Supreme Court in *Stern v. Marshall* concluded that -- even though the proceeding was core under 28 U.S.C. § 157(b)(2)(C) and that the bankruptcy court had the statutory authority to resolve the matter --the bankruptcy court nevertheless lacked the

constitutional power to finally decide a state-law counterclaim where the counterclaim was not so closely related to the creditor's claim that it could be adjudicated as part of the claims resolution process.

In March of 2011, the United States Supreme Court entered another decision that provides instructful guidance on YVEC's subject matter jurisdiction argument. *See Henderson ex rel. Henderson v. Shinseki*, ⸺ U.S. ⸺, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011). In an attempt to "bring some discipline" to the use of the term "jurisdictional" the Supreme Court in *Henderson* wrote:

> Branding a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system. Under that system, courts are generally limited to addressing the claims and arguments advanced by the parties. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356-357, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006). Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. *See Arbaugh, supra*, at 514, 126 S.Ct. 1235.
>
> Jurisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants. For purposes of efficiency and fairness, our legal system is replete with rules requiring that certain matters be raised at particular times. *See Sanchez-Llamas, supra*, at 356-357, 126 S.Ct. 2669. Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction. *Arbaugh*, 546 U.S., at 508, 126 S.Ct. 1235. Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction. *Ibid*. And if the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted.
>
> Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term. We have urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. *Reed Elsevier, supra*, at ----, 130 S.Ct., at 1243-1244; *Kontrick, supra*, at 455, 124 S.Ct. 906. Other rules, even if important and mandatory, we

> have said, should not be given the jurisdictional brand. *See Union Pacific*, 558 U.S., at ----, 130 S.Ct., at 596.

In *Stern v. Marshall,* the Supreme Court reiterated:

> Because "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system," *Henderson v. Shinseki*, 562 U.S. ——, —— – ——, 131 S.Ct. 1197, 1201–03, 179 L.Ed.2d 159 (2011), we are not inclined to interpret statutes as creating a jurisdictional bar when they are not framed as such. *See generally Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character").
>
> Section 157(b)(5) does not have the hallmarks of a jurisdictional decree. To begin, the statutory text does not refer to either district court or bankruptcy court "jurisdiction," instead addressing only where personal injury tort claims "shall be tried."
>
> The statutory context also belies Pierce's jurisdictional claim. Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. *See* §§ 157(b)(1), (c)(1). That allocation does not implicate questions of subject matter jurisdiction. *See* § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case). By the same token, § 157(b)(5) simply specifies where a particular category of cases should be tried. Pierce does not explain why that statutory limitation may not be similarly waived.

Consistent with the above, several courts have recently concluded that *Stern v. Marshall* does not deprive bankruptcy courts of subject matter jurisdiction. *See, e.g., In re Wilderness Crossings, LLC,* 2011 WL 5417098, *1 (Bankr. W.D.Mich. Nov 08, 2011); *In re Bujak*, 2011 WL 5326038, *2 (Bankr. D.Idaho Nov 03, 2011); *In re Sunra Coffee LLC*, 2011 WL 4963155, *4 (Bankr. D.Haw. Oct 18, 2011); and *In re Citron*, 2011 WL 4711942, *2 (Bankr. E.D.N.Y. Oct 06, 2011). For the reasons discussed above, the Court rejects YVEC's argument that *Stern v. Marshall* stripped this Court of subject matter jurisdiction over the State Court litigation between YVEC and Debtor.

Next, under 11 U.S.C. § 362, a bankruptcy petition generally "operates as a stay, applicable to all entities" of the commencement or continuance of judicial proceedings against the debtor. *See* 11 U.S.C. § 362(a). The importance of the automatic stay is discussed in the legislative history of § 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 340-42 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 54-55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787 at 5840-41 and 6296-97. *See also Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986) (Acknowledging that the "automatic stay provision of the Bankruptcy Code, § 362(a), has been described as 'one of the fundamental debtor protections provided by the bankruptcy laws.'") (footnote omitted).

The fundamental debtor protections afforded by § 362(a) are not absolute. 11 U.S.C. 362(d). As explained in § 362(d):

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
>  (1) for cause[.]

What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). The Ninth Circuit Court of Appeals has not addressed the particular issue of whether the automatic stay may be lifted to permit pending litigation to go forward. The Second Circuit Court of Appeals,

however, has visited this issue, and provides the following guidance:

> Neither the statute nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance.  The Senate Report thus states:
>
>> The lack of adequate protection of an interest in property is one cause for relief, but is not the only cause.  Other causes might include the lack of any connection with or interference with the pending bankruptcy case.  Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is protection of the debtor and his estate from his creditors.
>
>  S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838.  Other legislative history indicates that the "facts of each request will determine whether relief is appropriate under the circumstances."  H.R.Rep. No. 595, 95th Cong., 2d Sess. 343-44, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6300.
>
> In summarizing the case law under Section 362, *Collier* also mentions only a few specific circumstances amounting to "cause."  It thus states:
>
>> Actions which are only remotely related to the case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum.  Generally, proceedings in which the debtor is a fiduciary or which involve the postpetition activities of the debtor need not be stayed since they bear no real relationship to the purpose of the stay which is to protect the debtor and the estate from creditors.  Where the claim is one covered by insurance or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff.  Finally, the liquidation of a claim may be more conveniently and speedily determined in another forum.
>>
>> No specific mention is made of lack of prospects for rehabilitation, a common ground for vacating stays of foreclosure under the Act, though this factor relates to the prospects of an "effective" reorganization within section 362(d)(2)(B).  Several changes elsewhere in the Code should reduce the importance of, but not eliminate this ground....
>>
>> In extreme cases a finding that the bankruptcy case was not commenced in good faith has been used as a basis for vacating or annulling the automatic stay.

2 *Collier on Bankruptcy* ¶ 362.07(3), at 362-65 to -67 (footnotes omitted).

*Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.*) 907 F.2d 1280, 1285-1286 (2nd Cir. 1990). After setting forth the foregoing, the Second Circuit Court of Appeals adopted twelve factors to consider when deciding whether pending, nonbankruptcy, litigation should be permitted to continue outside the bankruptcy forum. *Sonnax*, 907 F.2d at 1286 (adopting the twelve factors "catalogued" by the Bankruptcy Court for the District of Utah in *In re Curtis*, 40 B.R. 795 (Bankr. D.Utah 1984)). The twelve factors referenced in *Sonnax* are:

> (1) [W]hether relief [from the automatic stay] would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Id.* The Ninth Circuit Bankruptcy Appellate Panel agrees that the twelve *Sonnax* factors "are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *Kronemyer*, 405 B.R. at 921.

Neither the decision of the Second Circuit Court of Appeals in *Sonnax* nor the decision of

15

the Ninth Circuit Bankruptcy Appellate Panel in *Kronemyer* are binding upon this Court. However, the Court finds that the factors considered by both courts are instructive. Additionally, this Court agrees with the Ninth Circuit Bankruptcy Appellate Panel that "[w]e should 'give most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can.'" *Camilli v. Indus. Comm'n of Ariz. (In re Camilli)*, 182 B.R. 247, 251 (9th Cir. BAP 1995) (quoting *Colby v. J.C. Penny Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987)); accord, *Taffi v. United States (In re Taffi)*, 68 F.3d 306, 308 (9th Cir. 1995) (adopting "a cautionary rule, counseling against creating intercircuit conflicts"). Given the foregoing, the Court finds the holding set forth in *Sonnax* and *Kronemyer*, persuasive and will consider the above factors for resolution of the question at bar.

In addition, although "[t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one," § 362(d)(1) "requires an initial showing of cause by the movant." *In re Sonnax Indus.*, 907 F.2d at 1285. If such an initial showing of cause is not made, "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Id*.

For the reasons discussed below, the Court finds that YVEC has not satisfied its initial burden of showing cause for this Court to lift the automatic stay at this time. Thus, YVEC's motion to modify the automatic stay is denied at this time.

This case does not present the usual scenario of a secured creditor who seeks relief from the automatic stay imposed under § 362(a) because its collateral is eroding, or it lacks adequate protection, or the market rate of interest is higher, or the debtor shows little prospect for achieving an effective reorganization. This case similarly does not involve an injured party

16

seeking to proceed against a debtor's insurance carrier. Rather, unlike *Kronemyer*, which involved a chapter 7 liquidation, this case is a chapter 11 case in which the Trustee is seeking to reorganize Debtor's business and financial affairs. Therefore, the Court cannot grant YVEC its requested relief at this time.

For instance, under 11 U.S.C. § 365, the Trustee is permitted to assume or reject Debtor's executory contracts. Notwithstanding the rights afforded Debtor under § 365, YVEC seeks relief from the automatic stay to proceed with litigation which, in part, seeks termination of the WPC between Debtor and YVEC.

YVEC also seeks in its State Court litigation to terminate its membership in Debtor and to require that Debtor assign the WAPA contract to YVEC. The Trustee in this case is working on formulating a plan of reorganization. YVEC's request to terminate its membership in Debtor and secure the WAPA contract will interfere with the Trustee's reorganizational efforts because it will be time-consuming, expensive and could potentially undermine the chances for a successful reorganization. Moreover, YVEC seeks assignment of the WAPA contact, but WAPA has not been joined in the State Court litigation. WAPA has provided notice and clarification that it has not waived immunity and that any attempted assignment of allocations of Federal hydropower under that certain Contract for Firm Electric Service, Contract No. 04-UGPR-26, as amended, whether by the parties, a State Court order, or otherwise, is subject to WAPA's determination and approval under applicable Federal law and WAPA's procedures.

YVEC also seeks in its State Court litigation an accounting of all funds it contributed toward expenses of the Highwood Generating Station. YVEC can secure an order for such an accounting from this Court.

Finally, YVEC seeks return of all deposit and equity contributions to Debtor, yet YVEC has not filed a claim for such sums in Debtor's bankruptcy case. In sum, YVEC has not established any extraordinary circumstances to justify causing the Debtor and Trustee, at this early stage of the Chapter 11 process, to spend valuable time, funds and effort to defend the State Court litigation which may ultimately be irrelevant and which would interfere with the Trustee's efforts to formulate and achieve a successful Chapter 11 plan of reorganization. The Court finds it in the economic interests of both YVEC and the Debtor that this Chapter 11 case proceed and that the bankruptcy process not be usurped by YVEC's pending State Court litigation. If the Trustee is unable to formulate a confirmable plan within a reasonable period of time or if this case is later converted to Chapter 7, the Court would, as appropriate, entertain a renewed motion to abstain or lift the automatic stay.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED that Yellowstone Valley Electric Cooperative, Inc.'s ("YVEC") combined Motion for: (1) Abstention Regarding Its Pending Litigation Against Southern Montana, and (2) Entry of an Order Granting Relief From the Automatic Stay filed February 17, 2012, at docket entry nos. 274 and 278, is DENIED, without prejudice.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana