UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**SOUTHERN MONTANA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC**,

Debtor.

Case No. **11-62031-11**

# MEMORANDUM of DECISION

At Butte in said District this 8th day of January, 2013.

In this Chapter 11 bankruptcy, after due notice, a second hearing was held December 18, 2012, in Billings on the Joint Motion to Vacate Administrative Expense Order and Fix Objection Deadline filed August 9, 2012, by Lee A. Freeman, the duly appointed Chapter 11 trustee ("Trustee"), the Official Committee of Unsecured Creditors ("Committee") of debtor Southern Montana Electric Generation and Transmission Cooperative, Inc., and U.S. Bank National Association as Indenture Trustee, and certain holders consisting of Prudential Insurance Company of America, Universal Prudential Arizona Reinsurance Company, Forethought Life Insurance Company, and Modern Woodman of America (collectively, the "Noteholders").

John Cardinal Parks of Denver, Colorado and Joseph V. Womack of Billings, Montana appeared at the hearing on behalf of the Chapter 11 Trustee; Harold V. Dye of Missoula, Montana appeared at the hearing on behalf of the Committee; Martin S. King of Missoula,

1

Montana and William A. (Trey) Wood, III of Houston, Texas appeared at the hearing on behalf of PPL EnergyPlus, LLC; Martin S. Smith of Billings, Montana appeared at the hearing on behalf of Beartooth Electric Cooperative, Inc.; and Ross P. Richardson of Butte, Montana appeared at the hearing on behalf of NorthWestern Energy.  The Court heard attorney argument, Philip J. Martin, Lee Freeman and Rose Spear testified, and Exhibits A, B and C were admitted into evidence.  PPL EnergyPlus, LLC's Exhibits A through F were previously admitted into evidence at a hearing held September 25, 2012.  At the conclusion of the second hearing held December 18, 2012, the Court took the matter under advisement.

## BACKGROUND

As set forth in an Order entered October 23, 2012, which followed the first hearing held September 25, 2012, pursuant to a Power Purchase and Sales Agreement dated September 17, 2004, Debtor was obligated to purchase power from PPL EnergyPlus, LLC, and to pay for the same as invoiced on a monthly basis.  Debtor filed a voluntary Chapter 11 bankruptcy petition on October 21, 2011, and thereafter filed a motion seeking to prohibit utilities from altering, refusing or discontinuing service.  PPL EnergyPlus, LLC opposed Debtor's motion arguing it was not a utility provider.

On May 21, 2012, Debtor filed a Notice of Order Establishing Bar Dates, which Notice was accompanied by the Court's May 15, 2012, Order Establishing Bar Dates.  The Court's Order Establish Bar Dates provided on page 2:

> As a matter of law, procedure or case administration, parties should not be required to file a Proof of Claim on account of certain categories of Claims that they may hold against the Debtor.  Specifically, the Bar Dates should not apply to:
>
> * * *

  G. any claim allowable under sections 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtor's Chapter 11 Case, with the exception of any Claim allowable under section 503(b)(9) of the Bankruptcy Code (concerning value of goods received by the Debtor within 20 days before the Petition Date), which is subject to the 60-day Bar Date.

  In accordance with the Order Establishing Bar Dates, PPL EnergyPlus, LLC filed Proof of Claim No. 50 on July 13, 2012, asserting a claim of $374,863,708.19 stemming from the Power Purchase and Sales Agreement and power PPL EnergyPlus, LLC supplied to Debtor in the days leading up to Debtor's October 21, 2011, petition date.  Of the foregoing amount, PPL EnergyPlus, LLC indicates in Proof of Claim No. 50 that $2,492,412.00 is entitled to priority under 11 U.S.C. § 507(a)(2).[1]

  Consistent with its Proof of Claim, PPL EnergyPlus, LLC filed on July 13, 2012, an Application for Allowance and Payment of Administrative Claim Pursuant to 11 U.S.C. § 503(b)(9) ("Application"), seeking approval of its $2,492,412.00 administrative claim.  PPL EnergyPlus, LLC's Application was served on the Trustee and his counsel, Bart B. Burnett, Robert M. Horowitz, Kevin S. Neiman, John C. Parks, and Joseph V. Womack.  The Application was also served on the Committee's counsel, Harold V. Dye, and on the Noteholders' counsel, Jonathan B. Alter.  The Application, however, was not accompanied by the negative notice provision contemplated by Mont. LBR 9013-1, which provides that the Notice provision set forth in Mont. LBR 9013-1(e)[2] shall accompany "all motions, applications and other pleadings

---

[1] Neither the Debtor nor the Trustee have objected to Proof of Claim No. 50 filed by PPL EnergyPlus, LLC.

[2] Mont. LBR 9013-1(e) provides that "[a]fter each motion, in bold and conspicuous print, the moving party shall include the following language:"

**NOTICE OF OPPORTUNITY TO RESPOND**

3

requesting an order, unless governed by Mont. LBR 9013-1(g), in all contested matters and adversary proceedings." On August 6, 2012, the Court entered an Order allowing PPL EnergyPlus, LLC an administrative expense claim of $2,492,412.00 after finding good and sufficient cause existed to approve the Application.

In response to the Court's August 6, 2012, Order, the Trustee, Committee and Noteholders filed on August 9, 2012, a Joint Motion to Vacate Administrative Expense Order and Fix Objection Deadline requesting that the Court vacate the August 6, 2012, Order approving PPL EnergyPlus, LLC's administrative claim and further requesting that the Court grant the moving parties 14 days to file a response. The moving parties argue "Rule 60(a) authorizes the Court to 'correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.' Here, such a mistake and omission exist because the Court presumably entered the Administrative Expense Order without knowledge of PPL's failure to comply with Mont. LR 9013-1(e)[.]" Counsel for PPL

---

**AND REQUEST A HEARING**

**If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one (21) days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:**

        **NOTICE OF HEARING**
        **Date: _____**
        **Time:_____**
        **Location:_____**

**If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.**

EnergyPlus, LLC responded and set the matter for hearing.

At a hearing held September 25, 2012, the moving parties did not offer a defense to PPL EnergyPlus, LLC's Application, but harkened back to their due process argument based on PPL EnergyPlus, LLC's failure to attach the notice contemplated by Mont. LBR 9013-1(e) to their Application. The Court concluded in an Order entered October 23, 2012, that it was a waste of scarce judicial resources to remedy an alleged due process violation by granting an unsupported motion. Thus, to afford the moving parties an opportunity to properly defend their pending motion, the Court scheduled the second hearing, which was held December 18, 2012, and advised the moving parties of the need to sustain their burden of proof by showing, through factual evidence and/or legal argument, that they have a meritorious defense to the Application. The Court cautioned in the October 23 2012, Order that absent such a showing, the Order approving the Application would stand.

Rule 60, FED.R.CIV.P., incorporated into the Federal Rules of Bankruptcy Procedure by Rule 9024, provides relief from an order or judgment for such items as mistake, inadvertence, excusable neglect, newly discovered evidence and fraud. The moving parties seek relief under Rule 60(b)(4) which allows the Court to grant parties relief from an Order if "the judgment is void." The moving parties contend the Court's August 6, 2012, Order is void because PPL EnergyPlus, LLC did not comply with Mont. LBR 9013-1 and the Court and PPL EnergyPlus, LLC did not comply with 11 U.S.C. § 503(b)(9) because administrative claims under § 503(b)(9) can only be allowed "after notice and a hearing."

"Relief under Rule 60(b) requires a party to show 'extraordinary circumstances'[.]" *Pioneer Inv. Services, Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380, 113 S.Ct.

5

1489, 1497, 123 L.Ed.2d 74 (1993). Such relief "normally will not be granted unless the moving party is able to show both injury and that the circumstances beyond its control prevented timely action to protect its interests." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) *cert. denied*, 510 U.S. 813,114 S.Ct. 60, 126 L.Ed.2d 29 (1993); *see also Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977) (holding that Rule 60(b) movant must demonstrate the presence of "'a meritorious defense and that arguably one of the . . . conditions for relief applies[.]'")

At the hearing held December 18, 2012, the moving parties argue in the first instance that electricity is not a "good" and that 11 U.S.C. § 503(b)(9) only allows an administrative claim for "goods" received within 20 days before the date of commencement of a case. The moving parties also argue that even if electricity is a "good," the value of the electricity was something less than the price called for under the September 17, 2004, Power Purchase and Sales Agreement and that PPL EnergyPlus, LLC calculated its § 503(b)(9) claim on 20 days and 16 hours rather than just 20 days of electricity. The parties do not dispute that PPL EnergyPlus, LLC sold power to Debtor in the ordinary course of Debtor's business.

The threshold issue is whether electricity is a good. The Power Purchase and Sales Agreement provides on page 1 that Debtor is not an end user of power and wishes to purchase power, as a wholesale customer, from PPL EnergyPlus, LLC. Debtor supplies the power it purchases from providers, such as PPL EnergyPlus, LLC, to its members, who in turn sell the power to their customers. For that reason, *In re Pilgrim's Pride Corp.*, 421 B.R. 231 (Bankr. N.D.Tex. 2009), which involved a debtor that was the end user or consumer of electricity, is factually distinguishable from the case *sub judice*, where Debtor is in the business of buying and

selling power. In this case, neither the Debtor nor its members are the end user, or consumer, of the electricity supplied by PPL EnergyPlus, LLC.

Rather, under the facts of this case, the Court finds the reasoning that electricity is a good, as set forth in *GFI Wisconsin, Inc. v. Reedsburg Utility Comm'n*, 440 B.R. 791, 799-801 (W.D.Wis. 2010), persuasive:

> Determining the physical nature of electricity is complex. It requires an understanding of the nature of electrons and a grasp of quantum physics and special relativity. For the purpose of determining administrative priority under the Bankruptcy Code, the meaning of "goods" under the UCC should not depend on quantum physics, how fast electrons are moving at a particular time or even where a debtor's meter is located on an electrical circuit. Rather, determining whether a particular thing qualifies as a good and deserves administrative priority should be a straightforward assessment, taking into consideration the nature and common understanding of the thing, but also considering its similarities to goods that fall undisputedly under the UCC and would receive administrative priority under § 503(b)(9).
>
> * * *
>
> Few courts deciding how electricity should be treated under the UCC or other laws focus solely or even primarily on the physics of electricity; rather, they consider the general movability of electricity, common perceptions of electricity and the exchange of electricity as a commodity in the marketplace. For example, the bankruptcy court in [*In re Erving Industries, Inc.*, 432 B.R. 354, 370 (Bankr. D.Mass 2010)], stated that it is "logical" that electricity would be considered a good under the § 503(b)(9) because it is both identifiable and moving until it reaches the intended customer. Similarly, in [*In re Pacific Gas & Electric Co.*, 271 B.R. 626, 640 (N.D.Cal.2002)], the court considered how electricity had been treated in other areas of the law and concluded that metering satisfies the identification requirement of the UCC and moving through a circuit satisfies the movability requirement. Id. ("Simply put, electricity in this instance is a thing movable at the time of identification to the contract for sale.")
>
> Similarly, courts determining whether electricity is "property" or a "product" for purposes of product liability, theft or other purposes, focus on the general physical nature of electricity and its movability. *E.g., Commonwealth v. Catalano*, 74 Mass.App.Ct. 580, 908 N.E.2d 842, 845–46 (2009) (electricity is "personal chattel" that may be subject of larceny because it "may be stored and

> conveyed ... may be transmitted through wires ... [and the] [q]uantity of consumption is measurable"); *Monroe v. Savannah Electric & Power Co.*, 267 Ga. 26, 471 S.E.2d 854, 855–56 (1996) (electricity is product for strict liability purposes because it can be "produced, confined, controlled, transmitted, and distributed in the stream of commerce ... [and] can be measured, bought and sold, changed in quantity or quality [and] delivered wherever desired") (internal citations and quotations omitted); *Bryant v. Tri–County Electric Membership Corp.*, 844 F.Supp. 347, 349 (W.D.Ky.1994) (electricity is product under strict liability law because it "can be made or produced ... confined, controlled, transmitted and distributed").
>
> I agree with those courts concluding that electricity is movable, tangible and consumable, that it has physical properties, that it is bought and sold in the marketplace and thus, that it qualifies as a good for purposes of the UCC and the Bankruptcy Code. As noted by the bankruptcy court below, electricity begins flowing through power lines when a circuit is formed and continues moving at least until it is metered. The metering satisfies the identification requirement of the UCC and the movement is sufficient to satisfy the movability requirement, even if it reaches the speed of light. *Pacific Gas & Electric*, 271 B.R. at 640 (electricity is "good" because it can be moved through power lines and identified through meters); *see also Helvey v. Wabash County REMC*, 151 Ind.App. 176, 278 N.E.2d 608, 610 (1972) (analogizing electricity to natural gas and finding that electricity satisfies movability and identifiability requirements of UCC as it moves into meter).

*See also In re Grede Foundries, Inc.*, 435 B.R. 593 (Bankr. W.D.Wis. 2010) ("there is no principled distinction to be made between natural gas, water, or electricity. Regardless of how big the particle or how fast it moves, it is a good if moveable at the time of identification.") For the reasons discussed, the Court concludes the power supplied by PPL EnergyPlus, LLC to Debtor was a good.

The Trustee next argues PPL EnergyPlus, LLC improperly calculated the amount of its administrative claim. Specifically, the Trustee contends PPL EnergyPlus, LLC improperly calculated its § 503(b)(9) claim on 20 days and 16 hours rather than just 20 days of electricity. The language of § 503(b)(9) clearly provides that a creditor is entitled to an administrative

8

expense claim for "the value of any goods received by the debtor within 20 days before the date of commencement[.]" The date of commencement in this case was October 21, 2011, and under § 503(b)(9), PPL EnergyPlus, LLC is entitled to a § 503(b)(9) administrative claim for the power supplied during the 20 days prior to October 21, 2011. Such conclusion elevates a small portion of PPL EnergyPlus, LLC's administrative claim to § 503(b)(1)(A) status.

   Finally, the Trustee, relying on the testimony of Philip J. Martin ("Martin"), argues that PPL EnergyPlus, LLC's administrative claim is something less than $2,492,412.00. Martin used historical pricing data and future price curves to ascertain the prices Debtor could have hypothetically paid for power for in October of 2011. However, on cross-examination, Martin conceded that he did not know if there was a seller who was willing to sell Debtor power in October of 2011. Martin also conceded that sellers may not have been willing to sell Debtor power if Debtor did not have cash on hand. While the Trustee did not provide any evidence of the cash the Debtor had at its disposal during the first 20 days of October, 2011, Debtor's Schedule B reflects Debtor had $300.00 cash on hand and $78,125.09 in its bank accounts on October 21, 2011. After improving Debtor's cash position post-petition, Martin admitted that the Trustee had to provide performance assurance, in the form of pre-payment, for power he purchased post-petition. The Trustee failed to present any persuasive evidence proving that the value of the power Debtor received from PPL EnergyPlus, LLC was anything less than $2,492,412.00.

   In sum, , the Trustee, Committee and Noteholders failed to present a meritorious defense to PPL EnergyPlus, LLC's administrative application. Therefore, the Court's Order entered August 6, 2012, allowing PPL EnergyPlus, LLC an administrative expense claim of

9

$2,492,412.00 shall stand as entered.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Joint Motion to Vacate Administrative Expense Order and Fix Objection Deadline filed August 9, 2012, is DENIED.

BY THE COURT

*Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

10