UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**SOUTHERN MONTANA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC**,

Debtor.

Case No. **11-62031-11**

# MEMORANDUM of DECISION

At Butte in said District this 1st day of October, 2013.

In this Chapter 11 bankruptcy, after due notice, a hearing was held July 31, 2013, in Billings on approval of the "Disclosure Statement for Trustee's Third Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." filed September 23, 2013, at docket entry no. 1049, and on the "Motion by Trustee for Entry of an Order Approving (I) the Confirmation Hearing Notice, the Contents of the Solicitation Package, and the Manner of Mailing and Service of the Solicitation Package, (II) the Procedures for Voting and Tabulation of Ballots, (III) the Forms of Ballots, and (IV) the Procedures for Allowing Claims for Voting Purposes Only" filed September 4, 2013, at docket entry no. 1004.

Harold V. Dye of Missoula, Montana appeared at the hearing on behalf of the Unsecured Creditors Committee ("Committee"); Laurence R. Martin and Martin S. Smith of Billings, Montana appeared at the hearing on behalf of Beartooth Electric Cooperative, Inc.; Trent M. Gardner of Bozeman, Montana and John P. Paul of Great Falls, Montana appeared at the hearing on behalf of Fergus Electric Cooperative, Inc.; Gary Ryder of Hysham, Montana appeared at the

1

hearing on behalf of Mid-Yellowstone Valley Electric Cooperative, Inc.; Martin S. King of Missoula, Montana appeared at the hearing on behalf of PPL EnergyPlus, LLC; John Cardinal Parks of Denver, Colorado and Joseph V. Womack of Billings, Montana appeared at the hearing on behalf of Lee A. Freeman, the Chapter 11 Trustee ("Trustee") for debtor Southern Montana Electric Generation and Transmission Cooperative, Inc. ("Southern Montana"); Jonathan B. Alter of Hartford, Connecticut appeared at the hearing on behalf of Prudential Insurance Company of America, Universal Prudential Arizona Reinsurance Company, Prudential Investment Management, Inc. as successor-in-interest to Forethought Life Insurance Company, and Modern Woodmen of America (collectively, the "Noteholders"); Jeffery A. Hunnes of Billings, Montana appeared at the hearing on behalf of Tongue River Electric Cooperative, Inc.; Joshua I. Campbell of Great Falls, Montana appeared at the hearing on behalf U.S. Bank National Association, as indenture trustee under the Indenture of Mortgage, Security Agreement and Financing Statement dated as of February 26, 2010; James A. Patten of Billings, Montana appeared at the hearing on behalf of EPC Services, Inc.; and James W. Ehrman of Cleveland, Ohio appeared at the hearing on behalf of Energy West Montana, a division of Energy West, Incorporated, and Energy West Resources, Inc.

The Court heard argument from counsel. No witness testimony or exhibits were offered.

## BACKGROUND

The parties are very familiar with the facts in this case, and while such facts are set forth in several memoranda of decision and orders previously entered by this Court, the Court deems it necessary to restate many of those facts here to provide context for the Court's ruling. Southern Montana was formed in 2003 as a not-for-profit under Montana's Rural Electric and Telephone

Cooperative Act. *See* MONT. CODE ANN. ("MCA") § 35-18-101, *et seq*. Yellowstone Valley Electric Cooperative, Inc. ("YVEC"), Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. were the original Members of Debtor.[1] The original Members were previously members of Central Electric Supply Cooperative. In 2004, the City of Great Falls/Electric Power City requested and was accepted as a purchasing member of Southern Montana and was granted a seat on Southern Montana's Board of Directors.[2] The aforementioned six entities were the Members when Southern Montana filed its bankruptcy petition on October 21, 2011.

In 2004, the Members entered into Wholesale Power Contracts with Southern Montana. The Wholesale Power Contract ("WPC") between Southern Montana and YVEC dated April 27, 2004, recognized that Southern Montana "may construct an electric generating plant or transmission system, or both, for the purpose, of among other things, of supplying electric energy and related services to borrowers from [the Rural Utilities Service], which are or may become members of" Southern Montana. The WPC "shall remain in effect through the 31st day of December, 2030[.]" The WPC further provided:

> [Debtor] shall sell and deliver to the Member and the Member shall purchase and receive from [Debtor] all electric energy and related transmission services which the Member shall require for the operation of the Member's system to the extent that [Debtor] shall have such wholesale electric energy, transmission services agreements, and associated facilities available . . .

---

[1] Member is defined at MCA § 35-18-102(4) as "each incorporator of a cooperative and each person admitted to and retaining membership in a cooperative as provided by the articles of incorporation or bylaws of the cooperative, including persons admitted to joint membership."

[2] Under Southern Montana's Bylaws, a Board of Trustees manages the business and affairs of Southern Montana. Each Member is authorized in the Bylaws to elect one trustee to serve on Southern Montana's Board of Trustees.

Also in 2004, Southern Montana and its Members entered into a power sales agreement with the Bonneville Power Administration and Southern Montana entered into a contract to purchase power from the Western Area Power Administration ("WAPA"). The power sales agreement with the Bonneville Power Administration expired by its own terms on October 31, 2011. The agreement with WAPA is still in effect and provides part of the electricity supplied by Southern Montana to its Members. Southern Montana's agreement with WAPA is considered a contract with an agency of the United States Government.

After Southern Montana's formation in 2003, the original Members began investigating alternative sources of power, including the possibility of constructing a coal-fired electric generating facility. Construction of a coal-fired electric generating facility was ultimately abandoned and discussions began about the possibility of building a gas-fired generation plant. By 2007, YVEC began questioning the cost and financial viability of a gas-fired generation plan.

In November of 2007, YVEC submitted a resolution to Southern Montana's Board of Trustees requesting that Southern Montana's Board of Trustees negotiate the terms and conditions of YVEC's withdrawal from Southern Montana. Southern Montana's Board of Trustees was apparently not receptive to YVEC's request for withdrawal. YVEC contended the Board of Trustee's adopted new Policies to change the way costs relating to a Member's withdrawal would be calculated. YVEC argued the new Policies were an effort by the Board of Trustees to make it prohibitively expensive and punitive for YVEC to withdraw as a Member.

In April of 2008, Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc.

4

decided to proceed with construction of an electric generating plan. On June 15, 2008, Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. formed SME Electric Generation and Transmission Cooperative ("SME") to proceed with construction of a gas-fired generating station, which is now known as the Highwood Generation Station.

In response to events that were taking place, YVEC filed a complaint naming Southern Montana as a defendant in the Montana Thirteenth Judicial District Court for Yellowstone County, requesting termination of its membership in Southern Montana, termination of its WPC, and an accounting and return of all funds it contributed toward expenses of the Highwood Generating Station and all deposit and equity contributions to Southern Montana. YVEC also sought an order that Southern Montana assign to YVEC its WAPA contract and a share of the Bonneville Power Administration contract, along with punitive damages. *See Yellowstone Valley Electric Coop., Inc. v. Southern Montana Elec. Generation and Transmission Coop., Inc., et al.*, Cause No. DV 08-1797. YVEC filed an amended complaint on or about July 26, 2010.

Southern Montana and the other Members filed an answer to YVEC's amended complaint on or about July 20, 2010. The answer included a counterclaim requesting declaratory relief determining and declaring that YVEC's WPC was a valid and binding contract that YVEC was obligated to timely perform until its expiration. In October of 2010, YVEC and the City of Great Falls/Electric Power City entered into a stipulation to dismiss the City of Great Falls/Electric Power City from the YVEC litigation. However, on March 15, 2011, the City of Great Falls/Electric Power City filed a complaint seeking declaratory judgment against Southern Montana requesting entry of a judgment that the City of Great Falls/Electric Power City was not

a proper member of Southern Montana, that the City of Great Falls/Electric Power City's Wholesale Power Contract and other obligations of Southern Montana and SME are void or voidable, for access to documents, and return of a security deposit. In response to the City of Great Falls/Electric Power City's complaint, Southern Montana filed an answer and counterclaim.

On or about February 26, 2010, Southern Montana and SME completed a financing package for construction of the Highwood Generating Station as a gas-fired generation plant. As part of the loan package, financed primarily by the Noteholders, the assets of SME developed in connection with the Highwood Generating Station, were transferred to Southern Montana. A 40 megawatt gas-fired simple cycle generation facility was ultimately constructed by Southern Montana as Phase One of a 120 megawatt combined cycle facility. Highwood Generating Sation became operational in September of 2011.[3]

Southern Montana filed a voluntary Chapter 11 bankruptcy petition on October 21, 2011. Per the schedules filed November 4, 2011, Southern Montana had real property valued at $101,896,410.84 and personal property valued at $8,531,182.61, which included $78,425.09 in four checking accounts. Lee A. Freeman was appointed to serve as the Chapter 11 Trustee in this case on November 29, 2011. The Trustee asserts that since his appointment, he was made adequate protection payments to the Noteholders totaling $14,570,836, has paid the Noteholders $1,681,562 for professional fees, and has paid PPL EnergyPlus, LLC's § 503(b)(9) claim in the agreed amount of $2,243,170. While making the above payments, Southern Montana's cash

---

[3] YVEC maintained that as of April 30, 2008, Southern Montana's total investment in the development of the Highwood Generating Station was just over $19.4 million.

position has improved and as of August of 2013, Southern Montana had cash on hand in excess of $8 million.

Since being appointed Trustee, Freeman has also entered into a settlement with YVEC that resulted in, among other things, resolution of the pending action filed by YVEC against Southern Montana and a lump sum payment by YVEC to Southern Montana in the amount of $2.5 million. The Trustee also entered into a settlement with the City of Great Falls that resulted in, among other things, a lump sum payment by the City of Great Falls to Southern Montana in the amount of $3.25 million. Pursuant to the two aforementioned agreements, YVEC and the City of Great Falls were allowed to withdraw as members of the Southern Montana.

On March 6, 2013, at docket entry no. 716, the Committee conditionally consented to the Trustee's settlement with YVEC, reasoning:

> The Committee's position is that the settlement meets the tests of *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986).
>
> The condition to the Committee's consent is that the settlement not act as defacto adjudication of the issue of whether the settlement proceeds are subject to any lien, particularly that of Pre-Petition Noteholders Forethought Life Insurance Company, Modern Woodmen of America, Prudential Insurance Company of America and Universal Prudential Arizona Reinsurance Company. Counsel for the Committee has conferred with counsel for the Noteholders and understands that they may object to the settlement and claim that the settlement affects their collateral. The Committee's position is the issue of the extent of a lien must be resolved by an adversary proceeding under Rule 7001(2) F.R.Bank.P.

WAPA filed a qualified response on March 12, 2013, at docket entry no. 722. WAPA's response is very instructive, and concludes that WAPA "does not object to the proposed amended settlement, as it is clearly contingent upon the Administrator's approval of assumption and assignment, and further Western qualifies its consent on there being a reorganization plan

7

approved wherein the remaining Southern Montana Electric Generation and Transmission Cooperative, Inc., itself and its members, continue to be qualified preference customers for the cost based public power." Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., LLC, and Fergus Electric Cooperative, Inc. filed a combined objection at docket entry no. 723 arguing the settlement "(1) should be included in and considered as part of confirmation of a Plan of Reorganization in this case; (2) fails to clearly address claims of the Cooperatives; and (3) fails to fairly and equitably allocate the Southern Montana's WAPA power." The Noteholders filed a limited objection and reservation of rights. At a hearing held March 26, 2013, the Trustee and Brandon Wittman testified in support of the Motion. No witnesses were called in opposition to the Motion and no party who filed an actual or limited objection presented any argument to the Court. The exhibits designated by all the parties who filed exhibits lists were admitted into evidence by stipulation. Based upon the arguments and evidence presented, the Court approved both settlements.

The Trustee also filed a motion for valuation and an objection to claim relating to the claim filed by the Noteholders arguing the Noteholders' collateral had a value of $5.6 million based upon an appraisal analysis of Highwood Generating Station as of January 1, 2013, dated March 29, 2013, by (a) MR Valuation Consulting, LLC, and (b) valuation of certain contract rights as of July 1, 2013, dated April 17, 2013, by Harper Hofer & Associates, LLC. A hearing on the foregoing matters was scheduled for July 29, 2013. On June 28, 2013, one day after the Committee filed a Motion to Convert, the Trustee filed another motion, which in part reads:

> During the several weeks preceding the filing of this motion and, in large measure, during the entirety of the Trustee's tenure in this case, the Trustee has been negotiating with the Noteholders to achieve a reasonable and fair resolution

> of all disputes and pave the way to a confirmable reorganization. After significant good faith negotiation between the parties, the Trustee and the Noteholders have just entered into a settlement agreement in principle that fully resolves the issues presented by the Valuation Motion and the Claim Objection. Under the proposed settlement and subject to the terms thereof, the Noteholders will waive their claim for a $46 million "Make-Whole Amount" in connection with this case. Also under the proposed settlement, approximately $25 million of the Noteholders' remaining claims, which totaled at least $85 million as of the Petition Date (not including the contested Make-Whole Amount, which would not have been waived but for the settlement), will be treated under an amended plan of reorganization for Southern to be filed by the Trustee as though the Noteholders were undersecured. Thus, for example, the adequate protection payments and professional fee payments the Noteholders have thus far received and are expected to receive before confirmation of a plan will pay down the principal on their debts and will reduce the amount owed by Southern to approximately $60 million. The $60 million balance will be treated under the Trustee's amended plan of reorganization as though the Noteholders' were fully secured but will be repaid at a discounted rate of interest that will be 200 basis points less than the interest rates under their respective prepetition notes. The proposed settlement will result in rates for power, energy, and transmission to Southern's remaining members that are fair and reasonable and far less than the projected rates that Southern had approved before the closing of their financing transaction with the Noteholders in February 2010. Thus, under the proposed settlement and the Trustee's amended plan of reorganization, both the Noteholders and Southern's remaining members will be treated fairly and equitably.

The Trustee represented that he would file an amended disclosure statement and plan incorporating the agreement with the Noteholders by August 14, 2013. Because of the foregoing, the valuation of the Noteholders' collateral was never brought before the Court.

On August 14, 2013, the Trustee filed a "Disclosure Statement for Trustee's First Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." The Trustee filed on September 12, 2013, at docket entry no. 1018, a "Disclosure Statement for Trustee's Second Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." On September 18, 2013, Mid-Yellowstone Electric Cooperative, Inc., the Unsecured Creditors Committee, PPL Energy

9

Plus, LLC, Fergus Electric Cooperative, Inc., Tongue River Electric Cooperative, Inc., and Beartooth Electric Cooperative, Inc. filed objections to the Trustee's Disclosure Statement for Trustee's Second Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc. In an effort to satisfy the September 18, 2013, objections, the Trustee filed a "Disclosure Statement for Trustee's Third Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." ("Disclosure Statement") at 2:36 p.m. on September 23, 2013. The Trustee also filed a redlined version of the Disclosure Statement at docket entry no. 1050. Fergus Electric Cooperative, Inc. and Mid-Yellowstone Electric Cooperative, Inc. filed replies to the Disclosure Statement, but counsel for the objecting parties generally complained that they did not have an opportunity to file written opposition to approval of the Disclosure Statement prior to the September 24, 2013, hearing. Because all parties want to bring finality to this case – whether it be a confirmed plan, conversion of the case to Chapter 7, or some other relief – the Court allowed all objecting parties to state their objections to the Trustee's Disclosure Statement at the hearing.

Counsel for the Trustee characterized the objections to approval of the Trustee's Disclosure Statement as twofold: (1) that the supplement is not attached to the Trustee's Plan; and (2) that Mid-Yellowstone Electric Cooperative, Inc., LLC, Fergus Electric Cooperative, Inc., Tongue River Electric Cooperative, Inc., and Beartooth Electric Cooperative, Inc. (the "Objecting Members") argue that approval of the Disclosure Statement is a pointless exercise because the Trustee's Plan cannot be confirmed without their consent, and the Objecting Members will not consent to confirmation of the Trustee's Plan.

## APPLICABLE LAW

A disclosure statement must include "adequate information."  "Adequate information" as defined at § 1125(a) means "information of a kind, and in sufficient detail, . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ."  *In re McKay*, 14 Mont. B.R. 296, 298 (Bankr. D.Mont. 1995); *Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 725 (Bankr. E.D. Cal.1992).

Before confirmation in a Chapter 11 case, a "court does not conduct an independent investigation and relies upon its reading of the document for apparent completeness and intelligibility," *In re Brotby*, 303 B.R. 177, 194 (9th Cir. BAP 2003), quoting *Michelson*, 141 B.R. at 719.  Having reviewed the Trustee's Disclosure Statement and attachments, the Court finds and concludes that it satisfies § 1125(a)(a) and provides adequate information, and that the objections are not well taken.

## DISCUSSION

In its written objection to approval of the Disclosure Statement filed September 24, 2013, Mid-Yellowstone Electric complains that "1) the Disclosure Statement is inadequate as it supports an unconfirmable bankruptcy plan, and 2) key portions of the Disclosure Statement are based upon a [sic] conclusory and unsupported statements."  Beartooth Electric Cooperative, Inc. echos the foregoing, arguing "(i) the Disclosure Statement fails to provide adequate information as that term is defined in 11 U.S.C. § 1125(a)(1), and (ii) the Trustee's Second Amended Plan of Reorganization . . . that the Disclosure Statement describes is not capable of being confirmed."

The Disclosure Statement filed September 23, 2013, satisfies many of the objections filed on September 18, 2013.  Other objections that were not cured by the Disclosure Statement filed

11

September 23, 2013, are more in the nature of plan objections. Dissension exists among the Objecting Members and they apparently do not want to proceed forward at this time as a cohesive group.[4] However, that is not a reason to deny approval of an otherwise valid Disclosure Statement. The objecting parties also question whether the Trustee's Plan will ultimately be feasible, or whether the Plan is simply visionary.[5] The objecting parties also raise valid arguments with respect to the benefit, if any, of Southern Montana's retention of the Highwood Generating Station, and repaying the Noteholders $60 million, when less than six month ago, the Trustee was arguing Highwood Generating Station and certain contract rights had a value of $5.6

---

[4] Tongue River Electric Cooperative, Inc. characterizes the relationship between the Southern Montana and the Objecting Members as ranging from "tenuous to openly antagonistic" and argues in its Objection filed September 18, 2013, at docket entry no. 1032:

> The Disclosure Statement provides little information about the extent that the litigation filed by Yellowstone Valley Electric Cooperative ("YVEC"), the City of Great Falls/Electric City Power, and the Billings Gazette against Southern contributed to the filing of Southern's bankruptcy. There is no discussion of the deadlock that existed on Southern's Board of Trustees prior to Southern's bankruptcy filing. There is no discussion of the dissension and deadlock created in Southern when Beartooth elected a new trustee to Southern's Board of Trustees and Southern's Board refused to seat her due to contentions that she would not honor Southern's confidentiality obligations. These were precipitating matters, occurring immediately prior Southern's bankruptcy filing, and are necessary to creditors' understanding of the untenable relationships present at Southern today.

[5] If the Trustee cannot get the Objecting Members onboard with his Plan, and if the deadlock and animosity amongst the Objecting Members continues, the Court is concerned that confirmation of the Plan would be followed by a liquidation or the need for further reorganization of Southern Montana. However, that concern must be weighed against the concern that a liquidation of Southern Montana could create a jurisdictional and procedural quagmire.

million.[6] In addition to Highwood Generating Station, the Committee convincingly argued that the Trustee should show at confirmation that his proposed plan will benefit more than the Trustee, Estate Professionals and the Noteholders. The Court agrees that the road to confirmation in this case is not nicely paved, and the Trustee has significant hurdles to overcome, but as stated earlier, that does not warrant disapproval of a Disclosure Statement that otherwise satisfies the requirements of 11 U.S.C. § 1125.

The Trustee also maintains that substantial critical information will be disclosed in a Plan Supplement to be filed at least five days prior to the confirmation hearing. The Court agrees that five days is not adequate and would direct that the Plan Supplement be filed on or before October 18, 2013. The Objecting Members also complain that they have not been provided a copy of the Nancy Temple Report, which apparently gives an opinion on the cause of this bankruptcy. Each of the Objecting Members should be familiar with the reasons why the Southern Montana ended up in bankruptcy, and should not need the report of Nancy Temple, but for purposes of completeness, the Court would direct that Nancy Temple finalize her report, if that has not already been done, and direct that the Trustee provide the Objecting Members with a copy of Nancy Temple's report. Full disclosure -- rather than hiding the ball, as the Committee contends the Trustee is doing – is the best course of action.

In sum, the objecting parties argue that the Disclosure Statement does not provide adequate information to enable them to make an informed judgment on the Plan. Ultimately, however, the objecting parties have demonstrated that they have information of a kind, and in

---

[6] The Trustee also provided an updated report which appraises the Highwood Generating Station at $14,398,000 in an orderly liquidation and another report appraising the fair market value of the Highwood Generating Station at $1,818,000.

sufficient detail to enable a hypothetical investor to make an informed judgment about the Trustee's Third Amended Plan of Reorganization filed September 23, 2013, at docket entry no. 1048.  Therefore, the Court will grant final approval of the Disclosure Statement.

As for the Motion by Trustee for Entry of an Order Approving (I) the Confirmation Hearing Notice, the Contents of the Solicitation Package, and the Manner of Mailing and Service of the Solicitation Package, (II) the Procedures for Voting and Tabulation of Ballots, (III) the Forms of Ballots, and (IV) the Procedures for Allowing Claims for Voting Purposes Only, the Court grants said Motion subject to the valid objections of the Committee and subject to the terms of this Memorandum of Decision and accompanying order.  In accordance with the foregoing, the Court will enter a separate order as follows:

**IT IS ORDERED AND NOTICE IS HEREBY GIVEN:**

A.     The Trustee's "Disclosure Statement for Trustee's Third Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." filed September 23, 2013, at docket entry no. 1049, is approved.

B.     On or before October 7, 2013, the Trustee shall transmit a copy of this Order, the Trustee's "Disclosure Statement for Trustee's Third Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc," the Trustee's Third Amended Plan of Reorganization, the Trustee's Confirmation Hearing Notice, amended in accordance with the Court's Memorandum of Decision to meet the objections of the Committee, and ballots conforming to those attached to the Trustee's Motion filed at docket entry no. 1004, by mail to creditors, equity security holders, the United States Trustee, and other parties in interest as provided in F.R.B.P. 3017(d).  The Trustee's counsel shall file a Certificate of Service

with the Court on or before October 7, 2013, showing that all parties-in-interest as set forth above were properly served with the above documents.

C. Hearing on confirmation of the Trustee's Third Amended Plan of Reorganization shall be held **Tuesday, November 12, 2013, at 01:30 p.m.**, or as soon thereafter as the parties can be heard, in the BIGHORN COURTROOM, 5TH FLOOR ROOM 5503, JAMES F. BATTIN UNITED STATES COURTHOUSE, 2601 2ND AVENUE NORTH, BILLINGS, MONTANA.

D. Pursuant to F.R.B.P. 3020(b)(1), **October 29, 2013**, is fixed as the last day for filing and serving written objections to confirmation of the Plan, and for filing written acceptances or rejections of the Plan. Any objection to the confirmation of the Plan must (i) be in writing; (ii) state the name and address of the objecting party, and the nature of the Claim or Member Interest of such party; (iii) state with particularity the basis and nature of any objection; and (iv) be filed in the docket of the Chapter 11 Case. A copy of any objection to confirmation shall also be served on counsel for the Trustee (John Cardinal Parks, HOROWITZ & BURNETT, P.C., 1660 Lincoln Street, Suite 1900, Denver, CO 80264), to the United States Trustee at: Office of the United States Trustee, 301 Central Avenue, Suite 204, Great Falls, Montana 59401, and to counsel (or chairperson) of the official committee of unsecured creditors, if any.

IT IS FURTHER ORDERED that the Plan Supplement be filed on or before October 18, 2013.

IT IS FURTHER ORDERED that the Trustee's Motion by Trustee for Entry of an Order Approving (I) the Confirmation Hearing Notice, the Contents of the Solicitation Package, and the Manner of Mailing and Service of the Solicitation Package, (II) the Procedures for Voting and

Tabulation of Ballots, (III) the Forms of Ballots, and (IV) the Procedures for Allowing Claims for Voting Purposes Only is granted subject to the terms of the Court's Memorandum of Decision and the Committee's objections.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana