Robert K. Baldwin (I.D. # 3248)
Trent M. Gardner (I.D. # 7477)
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Ph:     (406) 587-0618
Fax:    (406) 587-5144
Email: rbaldwin@goetzlawfirm.com
          tgardner@goetzlawfirm.com

John P. Paul (#1789)
**LAW OFFICE OF JOHN P. PAUL, PLLC**
410 Central Avenue, Suite 519
P.O. Box 533
Great Falls, MT  59403
Ph:     (406) 761-4422
Fax:    (406) 761-2009
Email: johnpaul@qwestoffice.net

Attorneys for Fergus Electric Cooperative, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTHERN MONTANA ELECTRIC ) | Case No. 11-62031 |
| GENERATION AND TRANSMISSION ) | |
| COOPERATIVE, INC. ) | |
| ) | |
| Debtor. ) | |

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

Fergus Electric Cooperative, Inc. ("Fergus"), through counsel, moves the Court, pursuant to 11 U.S.C. § 1105, to terminate the appointment of Chapter 11 Trustee, Lee A. Freeman.

The basis of this motion is that the circumstances which necessitated the appointment of a Chapter 11 Trustee no longer exist.  Thus, there is no longer any reason to incur the extraordinary

expense of a Chapter 11 Trustee and his professionals in this matter.

In support of this motion, Fergus states as follows:

## FACTUAL BACKGROUND

1. On October 21, 2011, the Debtor filed its Chapter 11 Voluntary Petition for Relief in this Court.

2. On November 14, 2011, the United States Trustee's Office filed its "Motion for Approval of Stipulation to Appointment of Trustee, Request for Expedited Hearing, and Request to Shorten Time to Object." Doc. 55. Attached to that motion was the "Stipulation to Appointment of Trustee," whereby Debtor consented to the appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(a).

3. On November 14, 2011, the Debtor, through counsel Malcolm H. Goodrich, filed its "Joinder with U.S. Trustee on behalf of Debtor for Appointment of Trustee," whereby it consented to the U.S. Trustee's motion for appointment of a trustee. Doc. 56.

4. On November 29, 2011, this Court entered its order appointing Lee A. Freeman to serve as the Chapter 11 Trustee for this bankruptcy pursuant to 11 U.S.C. § 1104(d).

5. It is undisputed that the reason that the Trustee was appointed, with the consent of the Members, was that the Board of Trustees for the Debtor (comprised of a representative of each Member) was deadlocked and, thus, could not properly manage the bankruptcy. Indeed, apparently the only thing that the Members could agree on was that a Trustee was required. After appointment, the Trustee worked diligently and has, until recently, been a benefit to this proceeding and the Debtor's estate. However, the sole reason for the Trustee's appointment from the start – deadlock among the Members – no longer exists. Thus, circumstances have changed, obviating the need for a Chapter 11 Trustee. The Trusteeship should be terminated.

6. Specifically, the Members[1] have recently come to unanimous agreement on one matter – they all agree that the Debtor should be liquidated. Now that the Members of the Debtor are unanimous in their belief that the Debtor should be wound up and liquidated, there is no reason for the Trustee to remain in place. On October 18, 2013, the Members filed the *Member Cooperatives' Plan of Liquidation of Southern Montana Electric Generation and Transmission Cooperative, Inc.* (Doc. 1100), asking the Court to approve a plan to wind-up and liquidate Debtor.

7. Ironically, however, the Trustee is now the one standing in the way of Debtor exercising its right to liquidate. *See* 11 U.S.C. § 1112(a). Indeed, if the Trustee were not in place, the Debtor would have had the exclusive right to file a Chapter 11 liquidating plan or would have the right to convert this case to a Chapter 7 liquidation. However, instead of allowing the Debtor to liquidate, the Trustee is attempting to force a reorganization on the Debtor that has no possibility of success.[2] Given the factual realities of the situation, it is difficult to comprehend how the Trustee's plan is feasible, as required by 11 U.S.C. § 1129(a)(11). Despite this, the Trustee is

---

[1] The current "Members" of Debtor are Fergus, Beartooth Electric Cooperative, Inc., Inc., Mid-Yellowstone Electric Cooperative, Inc. and Tongue River Electric Cooperative, Inc.

[2] There are numerous reasons the Trustee's plan is unconfirmable, including but not limited to the following:
- a. The Trustee has not disclosed the actual rates to be charged. His plan requires the Members to guarantee the Morgan Stanley contract, which the Members will not do. Without such forced guarantee, the actual rates are not known;
- b. It is dependent on the Wholesale Power Contracts being assignable, which they are not without the Members' consent;
- c. It takes away the Members' right to self-govern and make their own decisions in the management of Debtor, which rights are fundamental to the structure and purpose of a cooperative;
- d. The Members want to liquidate. They fundamentally believe that it is not possible for them to remain in business together for over a decade; and
- e. The Members believe the rates that the Trustee has disclosed (which are lower than what the actual rates would be) are not feasible and would lead to the failure of one or more of the Members. Indeed, certain of the Members have indicated that, if the plan is confirmed, their bankruptcy is likely, if not inevitable.

plowing ahead with his plan, forcing the Estate to incur millions of unnecessary dollars in cash collateral payments and litigation expenses.

8.      From all appearances, the Trustee is now marching in lock-step with the secured creditors, Prudential and Woodmen, and is fighting the battles of those secured creditors. Of course, the Members' rate-paying customers are footing the bill for the Trustee to fight against the Members' right to liquidate Debtor. In an even crueler twist, the Members rate-paying customers are also paying for the attorneys of Prudential. Thus, the rural Montana customers of the Members are footing the bill for two groups of extremely high-cost professionals who are attempting to prevent the Members from exercising their right to liquidate Debtor.

9.      Fergus submits that Prudential and other noteholders are perfectly capable of fighting their battles on their own and there is no reason, at this point, to have the added expense and complication of a Trustee who is attempting to prevent the Members from exercising their right to liquidate.

10.     The Trustee should be removed and the Debtor liquidated, whether through confirmation of the Members' liquidating plan, or through a conversion to a Chapter 7 liquidation.[3] The discussion at this point should be about how to best liquidate – time and money should not be wasted on attempting to force an unfeasible reorganization.

## LEGAL ARGUMENT

**I.   THERE IS A STRONG PRESUMPTION THAT A DEBTOR SHOULD BE IN CONTROL OF ITS CHAPTER 11 PROCEEDING.**

11.     "Chapter 11 of the Code is designed to allow the debtor-in-possession to retain

---

[3] While the Members have submitted a Chapter 11 liquidating plan, a Chapter 7 liquidation is also preferable to the Trustee's proposed plan and Fergus does not waive its right to move for conversion if it deems it appropriate.

management and control of the debtor's business operations unless a party in interest can prove that the appointment of a trustee is warranted, and there is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee." *In re Adelphia Communications Corp.*, 336 B.R. 610, 655 (Bankr.S.D.N.Y 2006); *see also In re Berwick Black Cattle Co.*, 405 B.R. 907, 912 (Bankr.C.D.Ill. 2009) (citing *Tradex Corp. v. Morse*, 339 B.R. 823, 825-26 (D.Mass. 2006)) ("[T]here is a strong preference for allowing a debtor in possession to control and manage its estate.").

12. Removing the Debtor from control of the Chapter 11 proceeding is not standard practice. Instead, it is an "extraordinary remedy" and "the standard for Section 1104 appointment is very high . . . ." *In re Bayou Group, LLC*, 564 F.3d 541, 546 (2d Cir. 2009) (citing *In re Smartworld*, 423 F.3d 166, 176 (2d Cir. 2005)); *see* also 7 Collier on Bankruptcy, ¶ 1104.02[2][a] (noting that appointment of a trustee in a Chapter 11 case is an "extraordinary" remedy).

13. To remove a debtor from control, the "U.S. Trustee has the burden of showing by 'clear and convincing evidence' that the appointment of a trustee is warranted." *In re Bayou Group, LLC*, 564 F.3d at 546 (quoting *In re: Adelphia Commc'sn Corp.*, 336 B.R. 610, 656 (Bankr.S.D.N.Y. 2006)).

14. This is important because, in this case, there was never any showing of wrongdoing, or even such a claim, used to justify the appointment of a trustee. Instead, upon filing bankrupcty, Debtor's Board recognized that it was deadlocked and therefore it would be in the best interest for all involved to have a trustee appointed. The Members do not dispute that this was the right decision at that point in time.

15. Now, however, the entire reason for the appointment of the Trustee, and for the consent of Debtor to the Trustee – the Board's deadlock – no longer exists. Thus, the circumstances

have changed, obviating the need for the extraordinary remedy of a trustee.

## II. CHANGED CIRCUMSTANCES REQUIRE REMOVAL OF THE TRUSTEE.

16. In contrast to the extremely high standard for appointing a trustee, the standard for removing a trustee and restoring the Debtor to control is quite low. 11 U.S.C. § 1105 provides:

> At any time before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate and of the operation of the debtor's business.

*Id.* Commentators explain that "the authority to terminate the trustee's appointment permits the court to reverse its decision to order the appointment of a trustee if new evidence reveals the impropriety of such appointment **or demonstrates a change in circumstances such that the debtor should be restored to possession of its property and management of its business**." Norton Bankruptcy Law on Practice 3D, § 99:22 (citing H.R. Rep. No. 559, 95th Cong., 1st Sess. 403 (1977). Collier agrees:

> The Code was designed to supply 'maximum flexibility with respect to the management of the debtor's affairs during the pendency of the case.' It follows that Section 1105 permits the court to terminate the appointment of a trustee where conditions have changed subsequent to the court's order of appointment and the continued service by a trustee is not in the interests of creditors, equity security holders, and other interests of the estate.'

*In re Curlew Valley Associates*, 14 B.R. 506, 514-15 (Bankr.D.Ut. 1981) (quoting 5 Collier on Bankruptcy, P 1105.01, 1105-1 1105-2).

17. Given the preference, indeed presumption, in favor of a debtor remaining in possession and in control of its own operation, and given the high bar for appointment of a Chapter 11 trustee, it is not surprising that there is no similarly high bar to the removal of a Chapter 11 trustee and the reinstatement to possession of a Chapter 11 debtor.

18. Very few cases have interpreted 11 U.S.C. § 1105. Those that have unanimously agree that a change in circumstances justifies reinstatement of the debtor to possession. For example, in *In re Eastern Consolidated Utilities, Inc.*, 3 B.R. 591 (Bankr.E.D.Penn. 1980), the court appointed a Chapter 11 trustee, for cause, based on testimony that "the officers of the debtor accepted unauthorized payments from the debtor after the filing of the Chapter 11 petition." *Id*. at FN3. Thereafter, through newly-employed counsel, the debtor moved to terminate the trustee's appointment pursuant to 11 U.S.C. § 1105, arguing that circumstances had changed which obviated the need for a trustee. *Id*. at 592-593. Specifically, the debtor argue it had "retained competent, experienced legal counsel" which remedied the problems for which the trustee was appointed. *Id*. The court agreed, noting that the wrongful action "appears to have been the result of ill-advised legal counsel," and, therefore granted "debtor's request to terminate the trustee's appointment, pursuant to § 1105, because we conclude that the circumstances which gave rise to the order appointing a trustee no longer exist." *Id*.; *see also In re Curlew Valley Associates, supra* (recognizing that a change in circumstances can be grounds for removing a trustee); and *In re Taub*, 441 B.R. 211 (Bankr.E.D.N.Y. 2010)) (same). Other courts have noted that Section 1105 provides a bankruptcy court "uncircumscribed power to terminate" a trustee's appointment. *In re Clinton Centrifuge, Inc.*, 85 B.R. 980, 984 (Bankr.E.D.Pa. 1988) (quoting *In re Gen. Oil Distribs., Inc.*, 42 B.R. 402, 409 (Bankr.E.D.N.Y. 1984)).

A. **It is Undisputed that the Reason for Appointment No Longer Exists.**

19. There can be no dispute that the Trustee was appointed solely on the basis that the Debtor's Board of Trustees was hopelessly deadlocked about management of Debtor. Likewise, there can now be no dispute that the circumstances have changed and deadlock no longer exists.

20. Specifically, all Members (whose representatives comprise the Board of Debtor) have

jointly filed their Chapter 11 Plan of Liquidation (Doc. 1100). Thus, there is no longer deadlock among the Board about the management of Debtor. The Members unanimously agree that Debtor's affairs should be wound up, the assets liquidated and Debtor dissolved. Thus, given the end of deadlock, and that there was never any finding of wrong-doing or other cause for appointment of a trustee, there is no remaining cause to justify the extraordinary remedy of a trustee.

21. Ironically, the only thing preventing the Debtor and its Members from moving forward in their unanimous resolve is the Trustee. This change in circumstances requires the Trustee's removal.

22. Fergus has no doubt that the Trustee will oppose this motion and try to retain his position. Frankly, Fergus is at a loss as to how the Trustee can justify such actions and continue to push a plan of reorganization when it is apparent that reorganization is not feasible. One of the reasons that the Members are unanimous in their agreement that liquidation is required is their realization that there appears to be no possibility of the remaining Members to successfully remain in business together. The only thing they can agree on is to liquidate.

23. When the members/owners of a business can agree on nothing other than that they should not be in business together, the only realistic conclusion is that liquidation must occur. This is a very strange scenario because in most cases in which the debtor is challenging the Chapter 11 trustee, the debtor wants to regain control in order to control the reorganization and/or avoid conversion to Chapter 7. Here, the opposite is true. The Debtor wants to liquidate, either through a Chapter 11 liquidating plan or through conversion to a Chapter 7,[4] but the Trustee is preventing it. The undersigned has been unable to find any case where a Chapter 11 trustee was able to force

---

[4] Fergus reserve the right to move to convert to a Chapter 7 liquidation if the Debtor is put back in possession and such conversion is in the best interest of Debtor.

a reorganization over the unanimous desire of the debtor's owners/members to liquidate and cease the business relationship. The reason for this appears to be that attempting to force a reorganization in such a situation has zero probability of success and therefore cannot be found feasible.

24. Fergus understands if the Court is concerned about putting the Debtor back in possession due to past and ongoing management differences. However, such concerns should be alleviated by the fact that the Members have submitted a Chapter 11 Plan of Liquidation and that an approval of such plan is currently pending before the Court. Therefore, if that plan is not approved, or if it becomes apparent at any time that conversion is appropriate, then the matter can simply be converted to a Chapter 7 liquidation. Either way, the only purpose of reinstating the Debtor is to accomplish a liquidation without the interference and added expense of the Trustee.

**B.     Removal of the Trustee is in the Best Interest of the Estate.**

25. By this point, the Court is aware and informed that the Members unanimously oppose the Trustee's plan for reorganization and unanimously agree that the Debtor should be liquidated. In such a situation, it is difficult to comprehend how the Trustee's plan can affirmatively be found feasible as required by 11 U.S.C. § 1129(a)(11).

26. Despite this fact, the Trustee is pushing forward with his unconfirmable plan and forcing the Debtor to incur millions of dollars in unnecessary expenses. Specifically, with every month that passes without liquidation, the Debtor is being forced to pay hundreds of thousands of dollars in professional fees for the purpose of the Trustee and his counsel, and Prudential and their counsel, attempting to prevent Debtor from liquidating. According to the Trustee's own reporting, as of September 17, 2013, the Debtor had paid over $3 million to the Trustee and his professionals. *See* Doc. 1049, p. 47. The Debtor had also paid to Prudential's and the other secured parties'

professionals more than $2.6 million. *Id.*[5] In addition, the Debtor is also paying over $1 million a month in adequate protection to Prudential. With this matter heating up and the Trustee pushing his plan, the monthly expenses of these professionals will likely only get higher.

27. Thus, each month that the Trustee remains in place and prevents liquidation costs the Debtor (or more accurately rural Montanan families, ranchers and businesses) close to $2 million in additional professional fees and adequate protection payments. Furthermore, with the exit of two of the previous members, YVEC and the City of Great Falls, it appears that the cash cushion which was previously amassed over the course of this bankruptcy is going to quickly dwindle and run out. *See* Doc. 1088.

28. There is simply no reason that the Debtor should be expending these vast sums on professionals who are trying to fight its right to liquidate. For this reason, the estate is better served by the removal of the Chapter 11 Trustee in order to allow an orderly and efficient liquidation.

## CONCLUSION

The justification for the appointment of the Trustee – Board deadlock – no longer exists. Because of this change in circumstance, there is no longer a legal basis for the Trustee to remain in place. The Trustee should be removed, pursuant to 11 U.S.C. § 1105, and the Debtor restored to possession solely for purposes of liquidation.

DATED this 21st day of October, 2013.

                GOETZ, BALDWIN & GEDDES, P.C.

                By: */s/Trent M. Gardner*
                    Attorneys for Fergus Electric Cooperative, Inc.

---

[5] These amounts paid to the Trustee's professionals and Prudential's professionals amount to only 85% of what these professionals have actually billed and claim that the Debtor owes. Doc. 1049, p. 40.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on October 21, 2013, a copy of the foregoing pleading was served (i) by electronic means pursuant to LBR 9013-1(c) on the parties noted in the Court's ECF transmission facilities and/or (ii) by mail on the following parties: None.

/s/Trent M. Gardner
Trent M. Gardner
GOETZ, BALDWIN & GEDDES, P.C.
ATTORNEYS FOR FERGUS ELECTRIC COOPERATIVE, INC.

## NOTICE OF OPPORTUNITY TO RESPOND
## AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion.  The responding party shall schedule the hearing on the motion at least twenty-one 21 days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

**NOTICE OF HEARING**
**Date:** _____
**Time:** _____
**Location:** _____

If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.