UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**SOUTHERN MONTANA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC**,<br><br>Debtor. | Case No. **11-62031-11** |

# MEMORANDUM of DECISION

At Butte in said District this 26th day of November, 2013.

In this Chapter 11 bankruptcy, after due notice, a hearing was held November 13, 2013, in Billings on the Motion to Remove Chapter 11 Trustee filed by Fergus Electric Cooperative, Inc. on October 21, 2013, at docket entry no. 1101. The Unsecured Creditors Committee, Beartooth Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Corval Group, Inc., Corval Constructors, Inc., the Energy Corporation and PPL EnergyPlus, LLC join in the Motion to Remove Chapter 11 Trustee. The Motion is opposed by the Chapter 11 Trustee, EPC Services Company, The Prudential Insurance Company of America, Universal Prudential Arizona Reinsurance Company, and Prudential Investment Management, Inc. as successor-in-interest to Forethought Life Insurance Company (collectively "Prudential"), and Modern Woodmen of America ("Modern Woodmen," and together with Prudential, the "Noteholders"). Robert K. Baldwin and Trent M. Gardner of Bozeman, Montana, and John P. Paul of Great Falls, Montana, appeared at the hearing on behalf of Fergus Electric Cooperative, Inc.; Harold V. Dye of Missoula, Montana appeared on behalf of the Unsecured Creditors

1

Committee; Martin S. Smith of Billings, Montana appeared on behalf of Beartooth Electric Cooperative, Inc.; Martin S. King of Missoula, Montana appeared on behalf of PPL EnergyPlus, LLC; Gary Ryder of Hysham, Montana appeared on behalf of Mid-Yellowstone Electric Cooperative, Inc.; John Cardinal Parks of Denver, Colorado and Joseph V. Womack of Billings, Montana appeared on behalf of the Chapter 11 Trustee; Jonathan B. Alter of Hartford, Connecticut and Steven M. Johnson of Great Falls, Montana appeared on behalf of the Noteholders; Jeffery A. Hunnes of Billings, Montana appeared on behalf of Tongue River Electric Cooperative, Inc.; and James A. Patten of Billings, Montana appeared on behalf of EPC Services Company.

The Unsecured Creditors Committee's Exhibits 1 through 3, the Trustee's Exhibits A through K, and the Members' Exhibits 2 and 3 were stipulated into evidence. In addition, Fergus Electric Cooperative, Inc.'s Demonstrative Exhibit 1 was admitted into evidence. Scott Sweeney, Arleen Boyd, Jim DeCock, Lee Freeman, and Carrie Boysun testified.

The hearing began with the Trustee's counsel representing that the Trustee and counsel for the Noteholders had met and that the Trustee was not sure the direction the case should take until the Noteholders made a proposal for further modified treatment of their claim under the Trustee's proposed plan. Counsel for the Trustee represented that the Trustee would immediately file further amendments to his proposed plan. In part, the Trustee intends to eliminate classes 3 and 4 to remove a threatened plan objection, and move those claims to class 6. The plan will also include a settlement with creditors of another class. Counsel for Fergus Electric Cooperative, Inc. was reluctant to comment on the foregoing, other than to advise the Court that the Noteholders' proposed modified treatment was more objectionable then what was

currently provided in the Trustee's plan.

BACKGROUND

The Debtor, Southern Montana Electric Generation and Transmission Cooperative, Inc. ("Southern Montana") was formed in 2003 as a not-for-profit under Montana's Rural Electric and Telephone Cooperative Act. *See* MONT. CODE ANN. ("MCA") § 35-18-101, *et seq*. Yellowstone Valley Electric Cooperative, Inc. ("YVEC"), Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. were the original members of Debtor.[1] In 2004, the City of Great Falls/Electric Power City requested and was accepted as a purchasing member of Southern Montana and was granted a seat on Southern Montana's Board of Directors.[2] The aforementioned six entities were the Members when Southern Montana filed its bankruptcy petition on October 21, 2011.

A significant element of Southern Montana's cooperative structure is that the Members are self-regulating through their control of Southern Montana's Board of Trustees. Southern Montana's bylaws constitute a contract between Southern Montana and each Member. Under the Montana Cooperative Act and Article III, § 1, of the Bylaws, the business and affairs of Southern Montana are managed by a Board of Trustees composed of one trustee representative chosen and elected by each Member. Article III, § 2 of the Bylaws requires that each trustee be a member of

---

[1] Member is defined at MCA § 35-18-102(4) as "each incorporator of a cooperative and each person admitted to and retaining membership in a cooperative as provided by the articles of incorporation or bylaws of the cooperative, including persons admitted to joint membership."

[2] Under Southern Montana's Bylaws, a Board of Trustees manages the business and affairs of Southern Montana. Each Member is authorized in the Bylaws to elect one trustee to serve on Southern Montana's Board of Trustees.

3

the Member he or she represents. The Members are empowered to remove Southern Montana's Board of Trustees.

In April of 2007, each of the Members executed a virtually identical wholesale power contract with Southern Montana. One of the primary purposes of the wholesale power contracts was to secure for the Members a dependable source of power under their management and control. The wholesale power contracts were based on the unique interrelationship and interdependence between Southern Montana and its Members, and is distinct from routine requirements contracts.

Section 1 of the wholesale power contracts provide:

> Southern Montana shall sell and deliver to the Member and the Members shall purchase and receive from Southern Montana all electric energy and related transmission services which the Member shall require for the operation of the Member's system to the extent that Southern Montana shall have such wholesale electric energy, transmission services agreements, and associated facilities available… ."

Under Section 7(A) of the wholesale power contracts, Southern Montana's Board of Trustees sets the wholesale power rates to be paid by the Members. Under Section 7(B) of the wholesale power contracts, the wholesale rates set by Southern Montana's Board of Trustees,

> shall produce revenues which shall be sufficient, but only sufficient, with the revenues of Southern Montana from all other sources to meet: the cost of the operation and maintenance (including without limitations, replacements, insurance, taxes and administrative and general overhead expense) of the electricity utility plant and related facilities including general plant of Southern Montana; the cost of any electric energy and related services purchased for resale by Southern Montana; the cost of transmission service; the payments on account of principal and interest on all indebtedness of Southern Montana; and to provide for the establishment and maintenance of reasonable reserves."

In April of 2008, Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc.

4

decided to proceed with construction of an electric generating plan. On June 15, 2008, Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. formed SME Electric Generation and Transmission Cooperative ("SME") to proceed with construction of a gas-fired generating station, which is now known as the Highwood Generation Station.

In response to events that were taking place, YVEC filed a complaint naming Southern Montana as a defendant in the Montana Thirteenth Judicial District Court for Yellowstone County, requesting termination of its membership in Southern Montana, termination of its wholesale power contract, and an accounting and return of all funds it contributed toward expenses of the Highwood Generation Station and all deposit and equity contributions to Southern Montana. YVEC also sought an order directing Southern Montana to assign its WAPA contract and a share of the Bonneville Power Administration contract to YVEC. *See Yellowstone Valley Electric Coop., Inc. v. Southern Montana Elec. Generation and Transmission Coop., Inc., et al.*, Cause No. DV 08-1797. YVEC filed an amended complaint on or about July 26, 2010.

Southern Montana and the other Members filed an answer to YVEC's amended complaint. The answer included a counterclaim requesting declaratory relief determining and declaring that YVEC's wholesale power contract was a valid and binding contract that YVEC was obligated to timely perform until its expiration. In October of 2010, YVEC and the City of Great Falls/Electric Power City entered into a stipulation to dismiss the City of Great Falls/Electric Power City from the YVEC litigation. On March 15, 2011, the City of Great Falls/Electric Power City filed its own complaint against Southern Montana requesting entry of a

5

judgment declaring that the City of Great Falls/Electric Power City was not a proper member of Southern Montana, that the City of Great Falls/Electric Power City's wholesale power contract and other obligations of Southern Montana and SME were void or voidable, for access to documents, and return of a security deposit. In response to the City of Great Falls/Electric Power City's complaint, Southern Montana filed an answer and counterclaim.

On or about February 26, 2010, Southern Montana and SME completed a financing package for construction of the Highwood Generating Station as a gas-fired generation plant. As part of the loan package, financed primarily by Prudential, the assets of SME developed in connection with the Highwood Generating Station, were transferred to Southern Montana. A 40 megawatt gas-fired simple cycle generation facility was ultimately constructed by Southern Montana as Phase One of a 120 megawatt combined cycle facility. Highwood Generating Sation became operational in September of 2011.[3]

At some point, YVEC submitted a resolution to Southern Montana's Board of Trustees requesting that Southern Montana's Board of Trustees negotiate the terms and conditions of YVEC's withdrawal from Southern Montana. Southern Montana's Board of Trustees was not receptive to YVEC's request for withdrawal. YVEC contended the Board of Trustee's adopted new Policies to change the way costs relating to a Member's withdrawal would be calculated. YVEC argued the new Policies were an effort by the Board of Trustees to make it prohibitively expensive and punitive for YVEC to withdraw as a Member.

Scott Sweeney, the general manager of Fergus Electric Coop for the past ten years, testified that he attended most of Southern Montana Electric Generation and Transmission

---

[3] YVEC maintained that as of April 30, 2008, Southern Montana's total investment in the development of the Highwood Generating Station was just over $19.4 million.

Cooperative, Inc.'s board meetings. Sweeney also attended Beartooth Electric's annual meeting in September of 2011. Up until September of 2011, Beartooth had been a supporter of Southern Montana, and as set forth above, a proponent of the Highwood Generating Station. However, in approximately September of 2011, Beartooth seated two new members to its board. The two new board members opposed further construction of the Highwood Generating Station. Also at that time, three new board members were elected to Southern Montana's board. The change in Beartooth's board and the impact such change had on Southern Montana's Board of Trustee's caused things to go, according to Sweeney, from "bad to worse" and chaos hit because Debtor now had a board that was in a 3 to 3 deadlock, with three members supporting Timothy Gregori, Debtor's then general manager, and three members strongly opposing Gregori.

Following the changes, Debtor's Board of Trustees met on October 21, 2011. Sweeney characterized that meeting as "horrendous." As reflected in the October 21, 2011, Minutes of the Meeting of the Board of Trustees of Debtor, Members' Exhibit 3, the first order of business was the seating of Arleen Boyd as the Trustee for Beartooth Electric Cooperative, Inc. Sweeney explained that there were some pretty heated debates and Boyd was ultimately not seated at the October 21, 2011, meeting. After a motion was put forth to seat Arleen, three of the board members walked out, leaving three board members remaining. The three remaining members went to a closed session and voted to file bankruptcy on behalf of Southern Montana and to impose a 20% rate increase.

Southern Montana filed a voluntary Chapter 11 bankruptcy petition. Southern Montana's schedules and statement of financial affairs were filed on November 4, 2011. Per the schedules filed November 4, 2011, Southern Montana had real property valued at $101,896,410.84 and

7

personal property valued at $8,531,182.61, which included $78,425.09 in four checking accounts.

On November 14, 2011, counsel for the United States Trustee filed a motion seeking approval of a stipulation for the appointment of a Chapter 11 trustee. Southern Montana's Board of Trustees met again on November 17, 2011. Trustee's Exhibit A. At that time, Boyd was seated on Southern Montana's board, the 20% rate increase was deemed null and void retroactively, the filing of Southern Montana's bankruptcy was ratified and the board further agreed with the United States Trustee for the appointment of a Chapter 11 trustee. Following a hearing held November 21, 2011, the Court granted the United States Trustee's motion and approved the stipulation for appointment of a trustee. On November 28, 2011, the United States Trustee filed an application seeking approval of the appointment of Lee A. Freeman as the Chapter 11 trustee. The Court approved the appointment of Lee A. Freeman to serve as trustee on November 29, 2011.

The Trustee asserts that since his appointment, he was made adequate protection payments to the Noteholders totaling $14,570,836, has paid the Noteholders $1,681,562 for professional fees, and has paid PPL EnergyPlus, LLC's § 503(b)(9) claim in the agreed amount of $2,243,170. Since being appointed Trustee, Freeman has also entered into a settlement with YVEC that resulted in, among other things, resolution of the pending action filed by YVEC against Southern Montana and a lump sum payment by YVEC to Southern Montana in the amount of $2.5 million. The Trustee also entered into a settlement with the City of Great Falls that resulted in, among other things, a lump sum payment by the City of Great Falls to Southern Montana in the amount of $3.25 million. Pursuant to the two aforementioned agreements,

YVEC and the City of Great Falls were allowed to withdraw as members of the Southern Montana.

With respect to the obligation owed the Noteholders, as set forth in a Final Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 105, 361, 362, 363 and 507 of the Bankruptcy Code entered May 1, 2012, at docket entry no. 413,

    After consultation with his attorneys and financial advisors, the Trustee, on behalf of himself, the Debtor and the estate, acknowledges, admits, represents, stipulates, and agrees that:

    (a)  As of the Petition Date, the Debtor was liable to the Prepetition Secured Parties in respect of obligations under the Indenture for (i) the aggregate principal amount of not less than $85 million on account of the Notes issued under the Indenture (plus accrued and unpaid interest thereon) and (ii) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Loan Documents or applicable law (collectively, the "Obligations").

    (b)  As of the Petition Date, all of the Obligations are unconditionally due and owing by the Debtor to the Prepetition Secured Parties.

    (c)  As of the Petition Date, all claims in respect of the Obligations (i) constitute legal, valid, binding and nonavoidable obligations of the Debtor and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

    (d)  The Prepetition Liens (i) constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the Prepetition Collateral that are senior in priority over any and all other liens on the Prepetition Collateral, subject only to those liens explicitly permitted by the Prepetition Loan Documents (to the extent any such Permitted Liens were valid, properly perfected, non-avoidable liens senior in priority to the Prepetition Liens on the Petition Date) (the "Permitted Priority Liens"), if any; (ii) are not subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise),

counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation; and (iii) are subject and subordinate only to (a) the Carve-Out (as defined below) and (b) Permitted Priority Liens, if any.

The Trustee filed a motion for valuation and an objection to claim relating to the claim filed by the Noteholders arguing the Noteholders' collateral had a value of $5.6 million based upon an appraisal analysis of Highwood Generating Station as of January 1, 2013, dated March 29, 2013, by (a) MR Valuation Consulting, LLC, and (b) valuation of certain contract rights as of July 1, 2013, dated April 17, 2013, by Harper Hofer & Associates, LLC. A hearing on the foregoing matters was scheduled for July 29, 2013. On June 28, 2013, one day after the Committee filed a Motion to Convert, the Trustee filed another motion, which in part reads:

> During the several weeks preceding the filing of this motion and, in large measure, during the entirety of the Trustee's tenure in this case, the Trustee has been negotiating with the Noteholders to achieve a reasonable and fair resolution of all disputes and pave the way to a confirmable reorganization. After significant good faith negotiation between the parties, the Trustee and the Noteholders have just entered into a settlement agreement in principle that fully resolves the issues presented by the Valuation Motion and the Claim Objection. Under the proposed settlement and subject to the terms thereof, the Noteholders will waive their claim for a $46 million "Make-Whole Amount" in connection with this case. Also under the proposed settlement, approximately $25 million of the Noteholders' remaining claims, which totaled at least $85 million as of the Petition Date (not including the contested Make-Whole Amount, which would not have been waived but for the settlement), will be treated under an amended plan of reorganization for Southern to be filed by the Trustee as though the Noteholders were undersecured. Thus, for example, the adequate protection payments and professional fee payments the Noteholders have thus far received and are expected to receive before confirmation of a plan will pay down the principal on their debts and will reduce the amount owed by Southern to approximately $60 million. The $60 million balance will be treated under the Trustee's amended plan of reorganization as though the Noteholders' were fully secured but will be repaid at a discounted rate of interest that will be 200 basis points less than the interest rates under their respective prepetition notes. The proposed settlement will result in rates for power, energy, and transmission to Southern's remaining members that are fair and reasonable and far less than the projected rates that Southern had approved before the closing of their financing transaction with the

> Noteholders in February 2010. Thus, under the proposed settlement and the Trustee's amended plan of reorganization, both the Noteholders and Southern's remaining members will be treated fairly and equitably.

The Trustee represented that he would file an amended disclosure statement and plan incorporating the agreement with the Noteholders by August 14, 2013. Because of the foregoing, the valuation of the Noteholders' collateral was never brought before the Court.

In the interim, the Unsecured Creditors Committee filed a motion to convert this case to Chapter 7 on June 27, 2013, at docket entry no. 913. Beartooth Electric Cooperative, Inc., Fergus Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., and PPL EnergyPlus, LLC joined in the motion to convert, while the Trustee, Noteholders and Tongue River Electric Cooperative, Inc. opposed the motion. At a hearing held July 31, 2013, the Court denied the Committee's motion to convert on grounds the Committee had failed to satisfy its burden of proof. As the Court wrote in its Order dated August 7, 2013:

> The Trustee testified that he has been working diligently to put Southern Montana on solid financial ground. The Committee does not dispute such testimony and in fact lays the blame for "this situation on the Noteholders who seem incapable of realizing that they made a bad loan and deal with it accordingly." According to the Trustee, he has reached an agreement with the Noteholders and he is ready to move forward with confirmation of a plan.

On August 14, 2013, the Trustee filed a "Disclosure Statement for Trustee's First Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." The Trustee filed on September 12, 2013, at docket entry no. 1018, a "Disclosure Statement for Trustee's Second Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." On September 18, 2013, Mid-Yellowstone Electric Cooperative, Inc., the Unsecured Creditors Committee, PPL Energy Plus, LLC, Fergus Electric Cooperative, Inc., Tongue River Electric Cooperative, Inc., and

Beartooth Electric Cooperative, Inc. filed objections to the Trustee's Disclosure Statement for Trustee's Second Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc. In an effort to satisfy the September 18, 2013, objections, the Trustee filed a "Disclosure Statement for Trustee's Third Amended Plan of Reorganization for Southern Montana Electric Generation and Transmission Cooperative, Inc." at 2:36 p.m. on September 23, 2013. The Trustee also filed a redlined version of the Disclosure Statement at docket entry no. 1050. Fergus Electric Cooperative, Inc. and Mid-Yellowstone Electric Cooperative, Inc. filed replies to the Disclosure Statement. The Court also allowed all objecting parties to state their objections to the Trustee's Disclosure Statement at the September 24, 2013, hearing. In a Memorandum of Decision and Order entered October 1, 2013, the Court approved the Trustee's disclosure statement, over the objections of many parties, but in reluctantly doing so, noted:

> The objecting parties also raise valid arguments with respect to the benefit, if any, of Southern Montana's retention of the Highwood Generating Station, and repaying the Noteholders $60 million, when less than six month ago, the Trustee was arguing Highwood Generating Station and certain contract rights had a value of $5.6 million. In addition to Highwood Generating Station, the Committee convincingly argued that the Trustee should show at confirmation that his proposed plan will benefit more than the Trustee, Estate Professionals and the Noteholders. The Court agrees that the road to confirmation in this case is not nicely paved, and the Trustee has significant hurdles to overcome, but as stated earlier, that does not warrant disapproval of a Disclosure Statement that otherwise satisfies the requirements of 11 U.S.C. § 1125.

The remaining Members would now like to liquidate Southern Montana and to that end Beartooth Electric Cooperative, Inc., Fergus Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc. and Tongue River Electric Cooperative, Inc. filed on October 18, 2013, a Member Cooperatives' Plan of Liquidation which values the Noteholders' collateral at

$16.5 million. The Members' plan provides that the Noteholders' claim will be paid and satisfied in full by the surrender of the Highwood Generation Station and other collateral. The balance of the Noteholders' claim will be allowed as a general unsecured claim in an amount to be determined after resolution of any claims objection and any avoidance actions. The Members also filed a First Amended Disclosure Statement on October 25, 2013, at docket entry no. 1107.

In contrast, the Trustee's Third Amended Plan of Reorganization filed September 23, 2013, at docket entry no. 1048 retains possession of the Highwood Generating Station, classifies the Noteholders' claims into Classes 2(A) and 2(B), and provides for the claims in an aggregate principal amount equal to $85 million less (a) the total amount of adequate protection payments paid to the Noteholders pursuant to the DIP Order; (b) 100% of the Noteholders' professional fees; and (c) the Noteholders' share of the proceeds of the settlement between the City of Great Falls and Electric City Power, Inc. Prudential's share of the claim in the amount of $75 million will bear interest at the rate of 6.0% per annum, and Modern Woodmen's share of the claim in the amount of $10 million will bear interest at the rate of 5.25% per annum. The Trustee's proposed plan also requires the Members to guarantee a contract with Morgan Stanley. The Members have represent that they will not sign the guarantee.

Fergus Electric Cooperative, Inc. requests that the Trustee be removed from this case at this time, arguing "the circumstances which necessitated the appointment of a Chapter 11 Trustee no longer exist" and that "there is no longer any reason to incur the extraordinary expense of a Chapter 11 Trustee and his professionals in this matter." Fergus Electric Cooperative, Inc. argues in its motion:

> It is undisputed that the reason that the Trustee was appointed, with the consent of the Members, was that the Board of Trustees for the Debtor

13

(comprised of a representative of each Member) was deadlocked and, thus, could not properly manage the bankruptcy. Indeed, apparently the only thing that the Members could agree on was that a Trustee was required. After appointment, the Trustee worked diligently and has, until recently, been a benefit to this proceeding and the Debtor's estate. However, the sole reason for the Trustee's appointment from the start – deadlock among the Members – no longer exists. Thus, circumstances have changed, obviating the need for a Chapter 11 Trustee. The Trusteeship should be terminated.

* * *

From all appearances, the Trustee is now marching in lock-step with the secured creditors, Prudential and Woodmen, and is fighting the battles of those secured creditors. Of course, the Members' rate-paying customers are footing the bill for the Trustee to fight against the Members' right to liquidate Debtor. In an even crueler twist, the Members rate-paying customers are also paying for the attorneys of Prudential. Thus, the rural Montana customers of the Members are footing the bill for two groups of extremely high-cost professionals who are attempting to prevent the Members from exercising their right to liquidate Debtor.

The remaining members of Southern, consisting of Tongue River Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc., Beartooth Electric Cooperative, Inc., and Fergus Electric Cooperative, Inc. are in agreement that Southern Montana should be wound up and liquidated. Notwithstanding the wishes of the Members, the Trustee is seeking to force a reorganization on Southern Montana that, according to the Members, has no possibility of success.

DISCUSSION

The termination of a Chapter 11 trustee's appointment is governed by 11 U.S.C. § 1105, which reads:

> At any time before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate and of the operation of the debtor's business.

As the parties correctly note, this Court never determined that cause existed for the appointment of a trustee under 11 U.S.C. § 1104(a)(1), and similarly never found that the appointment of a trustee was in the interests of creditors, equity security holders, or others under 11 U.S.C. § 1104(a)(2). The appointment of the Trustee in this case was the result of an agreement between the United States Trustee and the Members of Southern Montana. The pending motion was electronically served on the United States Trustee, who has not filed a response to the request to remove the Trustee.

From the evidence presented, it is apparent all Members of Southern Montana agreed to the appointment of a Trustee early on because Southern Montana's Board of Trustees was deadlocked and unable to proceed forward in any meaningful fashion. Through agreements with the Trustee, YVEC and the City of Great Falls have left Southern Montana, leaving Southern Montana with four members who are in unanimous agreement that they do not want to move forward together and who are also in unanimous agreement that Southern Montana should be liquidated.[4] The Court finds that a change in circumstances, namely that Southern Montana's Board of Trustees is no longer deadlocked, obviates the need for the continued appointment of the Trustee. *See* 7 Collier on Bankruptcy ¶1105.02 (Alan N. Resnick & Henry J. Sommer, 16th ed., 2012).

The Court would also add that Carrie Boysun, an accountant employed by Southern Montana, testified she believes that without YVEC, Southern Montana will run out of cash because Southern Montana is experiencing about $100,000 of negative cash flow each month.

---

[4] Beartooth Electric Cooperative, Inc., Fergus Electric Cooperative, Inc., Mid-Yellowstone Electric Cooperative, Inc. joined the Unsecured Creditors Committee's June 27, 2013, motion to convert to Chapter 7.

The negative cash flow is undoubtedly in part related to the professional fees being paid to the Trustee, his counsel and counsel for the Noteholders. A cursory review of the record reveals that the Trustee, his counsel and counsel for the Noteholders have applied for fees and costs in excess of $6 million, and yet, after two years, the Trustee has not secured confirmation of a plan.

As counsel for Fergus Electric Cooperative, Inc. indirectly suggests, there is the appearance of a perverse incentive to keep this case going along under the status quo, so the Trustee, his counsel and counsel for the Noteholders can continue filing interim fee applications that are subject to a lesser standard of review. Given the specific circumstances of this case, the Court does not see the need for the Trustee's continued appointment.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Motion to Remove Chapter 11 Trustee filed by Fergus Electric Cooperative, Inc. on October 21, 2013, at docket entry no. 1101 is granted; and the Trustee's appointment is terminated, effective immediately, and the Debtor is restored to possession and management of the property of the estate and of the operation of the Debtor's business.

BY THE COURT

_/s/ Ralph B. Kirscher_
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana