UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**SOUTHERN MONTANA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC**,

Debtor.

Case No. **11-62031-11**

# MEMORANDUM of DECISION

At Butte in said District this 1st day of April, 2014.

In this Chapter 11 bankruptcy, after due notice, a hearing was held March 11, 2014, in Billings on approval of three applications for fees and costs: (1) the Eighth Interim Application of Horowitz & Burnett, P.C. filed November 21, 2013, at docket no. 1154; (2) the Final Application of Horowitz & Burnett, P.C. for Professional Fees and Costs filed January 8, 2014, at docket no. 1234; and (3) the Eighth and Final Application of Lee A. Freeman, as Chapter 11 Trustee for Fees and Costs filed January 30, 2014, at docket no. 1254.  John Cardinal Parks of Denver, Colorado, appeared at the hearing on behalf of Horowitz & Burnett, P.C., Harold V. Dye of Missoula, Montana, appeared at the hearing on behalf of the Unsecured Creditors' Committee, and Malcolm H. Goodrich of Billings, Montana, appeared at the hearing on behalf of the Debtor. The parties agreed at the hearing that the Court could consider estimates of Debtor's unencumbered cash, which estimates would not be binding upon any of the parties.  Lee A. Freeman's Exhibits 1 through 8, Horowitz & Burnett, P.C.'s Exhibits 1 through 9, and Joint Exhibits 1 through 28 were admitted into evidence without objection.  Lee A. Freeman, Carrie

1

Boysun, and John Parks testified.

I.     **Eighth Interim Application of Horowitz & Burnett, P.C.**

In their Eighth Interim Application, Horowitz & Burnett, P.C., counsel for the former Chapter 11 Trustee Lee A. Freeman, seeks approval of an award of fees in the amount of $303,820.50 and reimbursement of costs in the amount of $10,687.37 for services rendered and costs and expenses incurred from August 1, 2013 to October 31, 2013. Horowitz & Burnett, P.C.'s Eighth Interim Application is not opposed. Interim fee awards are specifically authorized by 11 U.S.C. § 331 which provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

This Court liberally allows interim payments under § 331 to alleviate economic hardship in protracted causes and thereby facilitate competent and efficient administration. After reviewing Horowitz & Burnett, P.C.'s Eighth Interim Application and attached billing records, and based upon the liberal policy under § 331, the Court awards the interim fees and costs requested, with final review and approval addressed separately in this Memorandum of Decision.

II.    **Final Application of Horowitz & Burnett, P.C. for Professional Fees and Costs.**

In their Final Application for Professional Fees and Costs, Horowitz & Burnett, P.C., counsel for the former Chapter 11 Trustee Lee A. Freeman, makes its final application, seeking an aggregate final award in the amount of $2,458,418.76, which amount consists of (i) legal fees in the amount of $148,816.50 for services rendered from November 1, 2013 through December

23, 2013; (ii) costs in the amount of $4,217.32 incurred by Horowitz & Burnett, P.C. during the Last Interim Application Period; (iii) legal fees in the amount of $303,820.50 and costs in the amount of $10,687.37 for services rendered, and costs incurred, respectively, from August 1, 2013 through October 31, 2013, which fees and costs are subject to the pending eighth interim fee application filed by Horowitz & Burnett, P.C. (which were approved above); (vi) legal fees in the amount of $765 that had been previously disallowed on an interim basis;[1] and (v) a final award of amounts previously awarded to Horowitz & Burnett, P.C. on an interim basis in the amount of $1,990,112.07 (for services rendered and costs incurred from December 4, 2011, through and including July 31, 2013). Horowitz & Burnett, P.C. has already received $2,259,790.62 of the amount requested. The Unsecured Creditors' Committee does not object to approval of the fees and costs billed by Horowitz & Burnett, P.C. prior to June 28, 2013, but argues that the fees and costs sought by Horowitz & Burnett, P.C. after that date should be disallowed or substantially reduced on grounds that after June 28, 2013, Horowitz & Burnett, P.C. "ceased to act as the honest brokers bringing the disparate parties in this case to consensus (or failing that to propose what they considered the best plan for all parties in their professional judgment) but acted as an unrestrained advocate for one creditor group – the Noteholders." Energy West Montana and Energy West Resources, Inc. filed a Declaration stating they do not oppose the allowance of the requested fees, but noting that payment of allowed compensation could present a problem for the Debtor given its unencumbered cash position and the pending request for allowance and payment of administrative expenses of Energy West Montana for

---

[1] Horowitz & Burnett, P.C. provides additional detail with regard to the disallowed fees on page 58 of the Final Application.

$1,278,733.16 and Energy West Resources for $1,014,573.72 [Docket no. 1219] and the expectations of the debtor-in-possession's counsel and co-counsel that they will be paid going forward [Docket no. 1240] pursuant to the original interim compensation order [Docket no. 210]. Debtor remains neutral on the fee issue, and only asks that approval of the Final Applications in this Memorandum of Decision not become an encumbered versus unencumbered asset issue.[2]

As the parties recognized at the hearing, this Court has an independent obligation to review each application to evaluate the propriety of the compensation requested. *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 298 B.R. 392, 402 (9th Cir. BAP 2003 (*Eliapo I*), *rev'd in part on other grounds*, 468 F.3d 592 (9th Cir. 2006); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D. Ill. 1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system . . . is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Busy Beaver*, 19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Thus, this Court has an independent obligation to review each application to ensure that applicants provide an adequate summary of work performed and costs incurred. Extensive case law has developed regarding the amount and type of information that applicants must include in

---

[2] Horowitz & Burnett, P.C. asserts at page 59 of its Final Application that Debtor's unencumbered cash balance as of December 7, 2013, was $2,836,336.77.

their fee applications. The case of *In re WRB-West Assocs.*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:
>
>> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to determine whether the applicant provided:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

5

Attached to Horowitz & Burnett, P.C.'s First Interim Application filed February 29, 2012, at docket no. 291 are billing invoices for services performed ($204,388.00) and costs incurred ($10,646.95) between December 4, 2011, through January 31, 2012. Attached to Horowitz & Burnett, P.C.'s Second Interim Application filed May 30, 2012, at docket no. 441 are billing invoices for services performed ($339,753.00) and costs incurred ($12,109.05) between February 1, 2012, through April 30, 2012. Attached to Horowitz & Burnett, P.C.'s Third Interim Application filed August 30, 2012, at docket no. 514 are billing invoices for services performed ($328,292.00) and costs incurred ($20,508.20) between May 1, 2012, through July 31, 2012. Attached to Horowitz & Burnett, P.C.'s Fourth Interim Application filed November 30, 2012, at docket no. 595 are billing invoices for services performed ($304,994.50) and costs incurred ($20,280.99) between August 1, 2012, through October 31, 2012. Attached to Horowitz & Burnett, P.C.'s Fifth Interim Application filed February 28, 2013, at docket no. 702 are billing invoices for services performed ($286,982.50) and costs incurred ($8,321.14) between November 1, 2012, through January 31, 2013. Attached to Horowitz & Burnett, P.C.'s Sixth Interim Application filed May 30, 2013, at docket no. 868 are billing invoices for services performed ($268,813.50) and costs incurred ($3,105.53) between February 1, 2013, through April 30, 2013. Attached to Horowitz & Burnett, P.C.'s Seventh Interim Application filed August 30, 2013, at docket no. 1001 are billing invoices for services performed ($179,707.50) and costs incurred ($2,974.21) between May 1, 2013, through July 31, 2013. Attached to Horowitz & Burnett, P.C.'s Eighth Interim Application filed November 21, 2013, at docket no. 1154 are billing invoices for services performed ($303,820.50) and costs incurred ($10,687.37) between August 1, 2013, through October 31, 2013. Attached to the Final Application are billing invoices for

services performed and costs incurred between November 1, 2013, and November 26, 2013. After review of the billing statements, the Court finds that Horowitz & Burnett, P.C. has provided adequate detail to enable this Court to undertake its independent investigation.

In their Final Application, Horowitz & Burnett, P.C. set forth background facts, which the Court adopts here. In the Interim and Final Applications, Horowitz & Burnett, P.C. discuss their services in the context of the following "project categories:"

Business Operations ($139,500.00), *see* Exhibit A;
Financing ($87,872.00);
Plan and Disclosure Statement ($745,918.50), *see* Exhibit B;
Asset Analysis ($2,250.00);
Asset Disposition ($5,375.00);
Relief from Stay Proceedings ($31,491.00);
YVEC Appeal ($22,399.00);
YVEC Litigation ($96,170.00);
Case Administration ($459,818.00), *see* Exhibit C;
Claims Administration ($102,335.00);
PPL Appeal ($2,143.00);
Meeting of Creditors ($1,665.00);
Employment Applications ($158,339.50), *see* Exhibit D;
Employment Objections ($5,667.00), *see* Exhibit E;
Beartooth Adversary Proceeding ($46,376.50), *see* Exhibit F;
Construction Lien Adversary Proceeding ($2,910.00);
Members' Declaratory Judgment Adversary Proceeding ($40,459.00), *see* Exhibit G;
Corval Adversary Proceeding ($152.00), *see* Exhibit H;
Powell Adversary Proceeding ($155.00), *see* Exhibit I;
Edwards Adversary Proceeding ($155.00), *see* Exhibit J;
Doak Adversary Proceeding ($62.00), *see* Exhibit K;

      PPL Adversary Proceeding ($19,421.00), *see* Exhibit L; and

      Great Falls Litigation ($394,934.50).

The "Narrative Summary" provided by Horowitz & Burnett, P.C. in the Final Application for each of the project categories comports with the testimony, and are adopted herein. Various results achieved by the Trustee and his counsel in this case are set forth on pages 55 and 56 of the Final Application.

      Section 330(a)(3) lists factors to be considered in determining whether to allow fees:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
>     (A) the time spent on such services;
>     (B) the rates charged for such services;
>     (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>     (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>     (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>     (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3). The court may *sua sponte* award compensation that is less than the requested amount. 11 U.S.C. § 330(a)(2); *Eliapo*, 468 F.3d at 597.

      The Court has previously reviewed the billing statements attached to the Interim Applications, and found, with the exception of $765.00, that the amounts requested were reasonable and necessary. Horowitz & Burnett, P.C. has provided additional explanation with

respect to the $765.00 and it is thus approved. Putting aside the pending objections, the Court also finds that subject to three exceptions, the new fees and services set forth in Horowitz & Burnett, P.C.'s Final Application are reasonable and necessary.

With regard to the three exceptions, the first relates to the fees requested by Horowitz & Burnett, P.C. for preparation of their fee applications. In reviewing Exhibit D attached to the Final Application, the Court calculates that Horowitz & Burnett, P.C. is requesting approval of fees in excess of $25,000 for preparation of Horowitz & Burnett, P.C.'s Final Application. Such fees are in addition to the fees previously requested by Horowitz & Burnett, P.C. for preparation of the Interim Applications of at least $2,631.00 in the Second Interim Application, of at least $4,808.00 in the Third Interim Application, of at least $2,139.00 in the Fourth Interim Application, of at least $3,046.00 in the Fifth Interim Application, of at least $1,929.00 in the Sixth Interim Application, of at least $1,820.00 in the Seventh Interim Application, and $2,163.00 in the Eighth Interim Application. The Interim Applications clearly served as building blocks for the Final Application. In light of the amounts spent to prepare the Interim Applications, the Court disallows $20,000 of the requested fees associated with preparing and filing the Final Application.

Next, per Exhibit G, Horowitz & Burnett, P.C. requests $24,741.00 for services performed in connection with the Members' Adversary Proceeding No. 13-36 between November 8, 2013, and November 26, 2013. A motion for the Trustee's removal was filed on October 21, 2013, and was set for an expedited hearing to be held November 12, 2013. In the context of the Adversary Proceeding, the Members filed a motion to strike, a motion to dismiss and a motion for summary judgment on November 8, 2013. Horowitz & Burnett, P.C., on behalf

9

of the Trustee, prudently filed on November 19, 2013, a motion for extension of time to respond to the Members' three motions on grounds the Trustee's time and energy was focused on the motion seeking his removal.  Notwithstanding the motion for the Trustee's removal and the fact that this Court granted the Trustee's motion for additional time to respond to the Members' three motions filed November 8, 2013, Horowitz & Burnett, P.C. forged full steam ahead, incurring additional fees of $24,741.00 between November 8, 2013, the date the three motions were filed, and November 26, 2013, researching and drafting pleadings that were never filed.  Allowing the time prior to November 8, 2013, and allowing time to receive and review the motions and allowing the time to draft and file the motion for extension of time, the Court finds it appropriate to deny $22,851.00 of the requested fees shown on Exhibit G.

      Finally, the same reasoning, as discussed above regarding Adversary Proceeding No. 13-36, applies to the fees shown on Exhibit L (relating to Adversary Proceeding No. 13-47) regarding work performed between November 11, 2013, and November 24, 2013, totaling $19,421.00.  In that Adversary Proceeding, PPL Energy Plus, LLC filed a motion to dismiss on November 11, 2013, and the Trustee filed a motion for extension of time to respond to that motion on November 19, 2013, which the Court granted.  The Trustee was removed on November 26, 2013, without responding to the motion to dismiss.  Given the events that were transpiring in the Debtor's main bankruptcy case between October 21, 2013 (the date Member Fergus Electric Cooperative, Inc. filed its motion to remove the Chapter 11 Trustee), and November 26, 2013 (the date this Court removed the Trustee), it simply was not prudent of the Trustee to pursue with vigor, pending resolution of the motion seeking his removal, the matters in Adversary Proceeding No. 13-47.  Consequently, the fees of $19,421.00 set forth in Exhibit L

are denied.

As a further note, the Court would add that the time to respond to the three motions at issue in Adversary Proceeding No. 13-36 have been extended. Those matters are still pending to this date, and opposition has not yet been filed. The same holds true in Adversary Proceeding No. 13-47, where the Court just recently entered an Order granting the Debtor until April 4, 2014, to respond to the motion to dismiss filed November 11, 2013. It simply was not prudent for the Trustee or his counsel to run up substantial legal fees on matters that could have been more appropriately addressed after the Court ruled on the Member's request to remove the Trustee. Further, no evidence exists that any of work produced by the services rendered on the Adversary Proceedings has been submitted to the Debtor to be used by current counsel in pursuing the litigation.

Consideration of the Unsecured Creditors Committee's objection to the fees and costs billed by Horowitz & Burnett, P.C. after June 28, 2013, when the Trustee announced his settlement with the prepetition noteholders, remains. The Court is not persuaded by the Committee's objection.

The Trustee assumed control of the Debtor and its operations in November of 2011. At that time, the Trustee was faced with a number of obstacles; the Members of the Debtor could not agree on anything, Debtor was saddled with enormous debt associated with the construction of Highwood Generating Station, and the Debtor was burdened with power contracts that required the Debtor to pay rates for power that exceeded the rates available on the open market, to name a few. The Trustee tackled the obstacles head on and achieved, in almost every instance, a positive result. Indeed, this Court applauds the Trustee's efforts between his appointment in

November of 2011 and October 21, 2013, when Fergus Electric Cooperative, Inc. filed its motion to remove the Trustee. In fact, the Trustee's efforts removed the deadlock between the Debtor's Members that paralyzed the Debtor, thereby creating a situation where the Debtor was in a position to restored as a debtor-in-possession.

The Trustee, however, was still faced with the issues surrounding Highwood Generating Station, including the debt owed to the prepetition noteholders, Prudential Insurance Company of America, Universal Prudential Arizona Reinsurance Company, Prudential Investment Management, Forethought Life Insurance Company and Modern Woodman of America. Counsel for the Committee argued in a motion to convert filed June 27, 2013, at docket no. 913, that there "appears to be little chance of a consensual agreement between the Noteholders and the remaining member cooperatives for a payment structure that the members can afford." Only one day later, the Trustee filed a motion that reads, in part:

> During the several weeks preceding the filing of this motion and, in large measure, during the entirety of the Trustee's tenure in this case, the Trustee has been negotiating with the Noteholders to achieve a reasonable and fair resolution of all disputes and pave the way to a confirmable reorganization. After significant good faith negotiation between the parties, the Trustee and the Noteholders have just entered into a settlement agreement in principle that fully resolves the issues presented by the Valuation Motion and the Claim Objection.

None of the Members were happy with the settlement. That said, this Court is loath to substitute, with the benefit of hindsight, its judgment, or the judgment of opposing counsel, for that of professionals and their attorneys involving their litigation and settlement tactics. The Trustee was thrust into the unenviable position of acknowledging and addressing the rights of not only the Noteholders, but also other creditors, and the Members, who expressed their desire to walk away from the Noteholders and their collateral. The Trustee's efforts, and those of his counsel,

12

were laudable and arguably laid the groundwork for the settlement talks that are now ongoing between the Noteholders and the Members. For the reasons discussed, the Committee's objection to Horowitz & Burnett, P.C.'s Final Application is overruled.

### III. Eight and Final Application of Lee A. Freeman, as Chapter 11 Trustee for Fees and Costs.

In his Eighth and Final Application for Professional Fees and Costs, Lee A. Freeman ("Freeman") seeks an aggregate final award in the amount of $682,633.27 from November 28, 2011 through November 26, 2013, which amount consists of (i) fees in the amount of $64,300 for services rendered from September 1, 2013 through November 26, 2013 (the "Interim Period"); (ii) costs in the amount of $1,027.05 incurred by the Applicant during the Interim Period; and (iii) a final award of amounts previously awarded to the Applicant on an interim basis in the amount of $617,306.22 (for services rendered and costs incurred from November 28, 2011 to through and including August 31, 2013). The Unsecured Creditors' Committee objection to Freeman's Final Application is identical to the objection filed in response to Horowitz & Burnett, P.C. Final Application, as discussed in Section II above. Energy West Montana and Energy West Resources, Inc. also raise the same concerns to Freeman's Final Application related to the Debtor's unencumbered cash position. For the reasons discussed above, the objections to approval of Freeman's Final Application are overruled. Based upon the laudable performance by Freeman in this case, and after review of his Final Application, billing statements and the record, the Court finds that the services provided for which Freeman requests final approval are actual, reasonable and necessary for the estate. For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1. The Eighth and Final Interim Application of Horowitz & Burnett, P.C. filed November 21, 2013, at docket no. 1154 is approved; and John Cardinal Parks and Horowitz & Burnett, P.C., are awarded interim professional fees in the amount of $303,820.50 and reimbursement of costs and expenses in the amount of $10,687.37;

2. The Final Application of Horowitz & Burnett, P.C. for Professional Fees and Costs filed January 8, 2014, at docket no. 1234, is approved in part and denied in part; and Horowitz & Burnett, P.C. is awarded professional fees in the amount of $2,303,296 ($2,365,568 less $20,000, $22,851 and $19,421) plus reimbursement of costs in the amount of $92,850.76, or a total of $2,396,146.76, with $136,356.14 (the award of $2,396,146.76 less $2,259,790.62 already paid), to be treated as an administrative expense.

3. The Eighth and Final Application of Lee A. Freeman, as Chapter 11 Trustee for Fees and Costs filed January 30, 2014, at docket no. 1254, is approved; and Lee A. Freeman is awarded aggregate professional fees and costs in the amount of $682,633.27, with $25,930.23 (the award of $682,633.27 less $656,703.04 already paid), to be treated as an administrative expense.

BY THE COURT

*[signature]*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana